[Sac. No. 3214. In Bank.—May 28, 1923.]

B. L. CLEMENT, Respondent, v. W. H. DUNCAN et al., Defendants; W. H. DUNCAN, Appellant.

[1] PARTNERSHIP—ACTION FOR DISSOLUTION—INTERLOCUTORY DECREE —APPEAL.—In an action for the dissolution of a partnership and for an accounting, an interlocutory decree is not appealable where it is based upon findings which determine none of the questions at issue except the fact of partnership and the existence of mutual and undetermined claims and demands, and upon a conclusion of law which declares no more than that an accounting is necessary, a referee being appointed in the decree to state an account the settlement of which is essential to the fixing of the relative rights of the parties in the partnership property; and a dismissal of an appeal from such decree does not prevent a review of it on an appeal from the final judgment.

[2] ID.—TRANSFER OF PARTNERSHIP ASSETS TO CORPORATION—RIGHTS OF PARTNERS.—In such an action, where it is shown that the assets of the partnership were sold to a corporation and the entire stock of the corporation was issued in exchange for such property, whatever rights and interest the respective partners had in the partnership property was by mutual consent converted into the stock of the corporation, and the decree should either have authorized a division of the stock in accordance with the respective interests of the copartners or should have ordered the stock sold and the proceeds distributed in that proportion, and it was error

191 Cal.—14

for the court to render a personal money judgment against one of the partners, to whom the stock of the corporation was issued, in favor of the other partner.

[3] ID.—ADVANCES BY PARTNER—INTEREST.—Whether a partner is entitled to interest on money which is advanced by him to the partnership depends upon whether there was or was not an express agreement to that effect.

[4] ID.—WITHDRAWAL OF MONEYS BY PARTNER—INTEREST.—Generally, where a partner draws from the partnership funds to be applied to his own use and benefit an amount in excess of that which he is entitled to draw under the agreement of partnership, or any other agreement between the parties, interest should be charged on such overdraft, but this proposition depends on the condition on which, or the circumstances under which, the overdraft may be made.

[5] ID.—TRANSFER OF ASSETS OF PARTNERSHIP—GOODWILL OF BUSINESS—PROPERTY.—Under the code the goodwill of a business is property, transferable like any other, being the expectation of continued public patronage; and the transfer of a partnership business to a corporation necessarily involves a transfer of the goodwill of the business, the value of which it is proper for the court to determine and consider as an asset of the partnership in ascertaining and settling the value of the business and the profits which came therefrom in the years during which the partnership existed.

APPEAL from a judgment of the Superior Court of Plumas County. J. O. Moncur, Judge. Reversed.

The facts are stated in the opinion of the court.

Henry B. Neville, C. E. McLaughlin and C. P. McLaughlin for Appellant.

L. H. Hughes for Respondent.

WILBUR, C. J.—This case was transferred to the district court of appeal of the third district and after the decision

---

3.   Allowance of interest in favor of or against partner during continuance of firm, notes, **Ann. Cas.** 1913A, 173; 35 **L. R. A. (N. S.)** 220.

5.   Name of business establishment as part of goodwill on dissolution of partnership, note, 15 **L. R. A.** 463.

Right of partner to dispose of firm goodwill, note, 20 **Ann. Cas.** 582.

by that court, both sides applied for a transfer to this court. In the main we approve of the opinion written by Mr. Justice Hart in that court and we adopt the statement of facts prepared by him and the legal conclusions reached by him in that portion of the opinion so prepared hereinafter quoted, as follows:

"This action is for a dissolution of a partnership alleged by the complaint to have been formed and existed between the plaintiff and defendant, Duncan, for an accounting of the profits accruing to the partnership during its existence, for the appointment of a receiver to take charge of and administer the partnership affairs *pendente lite* and for sale of the property of the partnership and a division of the surplus between said copartners after the debts and liabilities of the partnership had been paid and satisfied.

"According to the complaint the plaintiff and defendant, Duncan, in the month of October, 1913, entered into a partnership under the terms of a parol agreement for the purpose of conducting the business of repairing, buying and selling automobiles and autotrucks, automobile accessories, oils, gasoline and supplies, in the counties of Plumas and Sierra, in the former county at the town of Quincy and in the latter at Loyalton. Under said agreement, it is alleged, they so conducted said business from the time of the establishment of the partnership relation between them under the firm name and style of the 'Ford Garage'; that said partnership, in conducting said business, acquired real and personal property, together with certain leasehold interests, said business proving profitable during all of the time of the existence of said partnership, 'having been started with no capital and having earned, over and above all expenses, profits to such an extent that its assets amounted to $50,000 on the first day of January, 1918.' It is further alleged that defendant, Duncan, has had at all times during the continuance of said business, custody and control of all books and accounts relating to the business of the copartnership and likewise has kept the same and made all entries therein of the transactions of said business; that all said books, accounts and papers relating to said business, consisting of deeds, contracts, leases, notes and bills, 'are now in the possession of said W. H. Duncan.' It is alleged that, as a matter of convenience, all conveyances and leases

of real property belonging to the copartnership were taken in the name of said Duncan, and that said conveyances and leases were made in behalf of and for the benefit of the copartnership. In the month of December, 1917, so proceeds the complaint, Duncan proposed to plaintiff that for the more convenient and economical management and conduct of the business of the partnership, the said business be incorporated, each of said partners to be entitled to and receive stock in such corporation according as his interest in said partnership might appear upon and after an account of said business; that, thereafter a corporation was formed under the name of 'Sierra Auto Supply Company,' with a capital stock of $50,000, divided into 500 shares of the par value of $100 each; that the directors and stockholders thereof named in the articles of incorporation are: W. H. Duncan, B. L. Clement, Edith N. Duncan, N. H. Squire and J. F. Spooner. Said Clement is the plaintiff herein, said W. H. Duncan is the defendant, said Edith N. Duncan is the wife of the defendant of that name, and Squire and Spooner were employees of the plaintiff and the defendant while they were engaged in conducting said business as copartners. It is averred that the defendant corporation, acting under the 'direction and dictation' of defendant, Duncan, issued to said Duncan 496 shares of its corporate stock; to Edith N. Duncan, Squire and Spooner, 1 share each; that plaintiff has not had issued to him any share or shares or any evidence of his interest in said corporation; that he has never attended a stockholders' or a directors' meeting of such corporation, nor has he ever been notified of any such meeting to be held or any knowledge of one ever having been held, and that he has never in any manner participated in the management or control of said corporation; that Edith N. Duncan and the said Squire and Spooner have never paid to said corporation the par value of the stock thereof issued to them or other sum of money or anything of value for said stock, and that said persons are mere 'figureheads and dummy directors' of the said corporation.

"It is alleged that on the first day of January, 1918, said defendant, Duncan, 'fraudulently and unlawfully and without the knowledge or consent of plaintiff, sold, transferred and delivered to the defendant, Sierra Auto Supply Company, all of the property belonging to the copartnership . . . ,

consisting of real estate, etc., . . . and goodwill of the business and the Sierra Auto Supply Company now fraudulently and unlawfully pretends to own all of said property.'

"On the fifteenth day of May, 1918, so the complaint states, the defendants expelled plaintiff from any participation in the affairs of said copartnership and have ever since excluded him from such participation and thus have deprived and do still deprive plaintiff of the use and the possession of the property belonging to said copartnership. It is alleged that the defendant corporation is not and has never been the owner of the property of the partnership; that plaintiff has never transferred or conveyed his interest in said property to said or any corporation; that no accounting has ever been had of the affairs of the partnership between plaintiff and the defendant, Duncan, or of the respective amounts drawn from the partnership funds by the partners. It is finally charged, upon information and belief, that defendant, Duncan, who is president of the board of directors of the defendant corporation, aided by the alleged 'dummy directors,' who, it is alleged, are under the control and domination of said Duncan, intend and design to defraud the plaintiff of his interest in the property and business of said partnership, and that said property and business, being in the full control of said Duncan, 'is in danger of being lost, removed or transferred to other parties, so as to render any judgment rendered herein ineffectual,' hence, the complaint states, to preserve the said property and business and the interest therein of plaintiff, and to prevent its removal, loss or illegal sale, it is necessary that a receiver be appointed to take charge of said property and to hold the same pending the determination of this action.

"The prayer is as indicated at the beginning of this opinion.

"The answer denies that a copartnership ever at any time existed between plaintiff and defendant, Duncan; alleges that the business and the property transferred to the corporation by Duncan and the business conducted under the name of the Ford Garage and the property acquired and used in connection therewith belonged entirely to said Duncan and that he furnished all the capital for the installation and carrying on of said business; alleges that

plaintiff was never at any time more than a mere employee of said Duncan; denies that the latter ever at any time made any proposal to the plaintiff that a corporation be formed for the purpose of taking over the business and property of the alleged partnership; admits that Duncan always kept the books and accounts of the Ford Garage, that all leases, conveyances, notes, etc., were made in his name, not in behalf of or for the benefit of the alleged copartnership but in behalf of himself and for his own benefit; admits that the corporation referred to was formed and that the business and property of the Ford Garage were transferred to said corporation and that such transfer was made with the full knowledge of the plaintiff; alleges that to plaintiff one share of the stock of the corporation was issued, but admits that said share, while accredited to plaintiff on the books of the corporation, was never delivered to him; admits that plaintiff has never attended a meeting of the stockholders or directors of said corporation, but alleges that he could have attended such meetings had he desired to do so at the times they were held and participated therein; alleges that plaintiff has at all times mentioned in the complaint been an employee of the defendant, Duncan, and of said corporation, and has received and been paid a monthly salary for his services; that on the fifteenth day of May, 1918, 'such employment was terminated and said Clement released therefrom.' The answer, proceeding further, sets forth the details of an alleged contract of employment whereby plaintiff was engaged by said corporation as a salesman after the transfer of the property and business of the Ford Garage to the corporation, and alleges that, from the date of the organization of said corporation, to the fifteenth day of May, 1918, the plaintiff's connection with and sole interest in said corporation was only that of a salesman.

"The court, on hearing evidence, made findings upon which it rendered and caused to be entered an interlocutory decree, whereby it adjudged, in harmony with its findings, that a partnership existed between the plaintiff and Duncan since the month of October, 1918, and that the same 'has never been dissolved; that the plaintiff is entitled to an account of all partnership funds and transactions relating thereto and to a dissolution of said partnership; that

an accounting is necessary between the plaintiff and the defendant, W. H. Duncan, covering all the property and business between them from the time of the commencement of said copartnership.' By said decree Duncan was required to render to the court, within fifteen days after the date of the decree a full and true account of the business of said partnership and thereupon and after a settlement of said account, 'the court will enter its final judgment herein.'

''An appeal was taken by defendant Duncan from the interlocutory decree, but was subsequently dismissed on his motion.

''The defendant, Duncan, reported to the court that, 'it is impossible for the said defendant to render and file herein an accounting that will conform to and comply with the terms of the said interlocutory decree,' and thereupon, and at the request of the defendant, the court appointed F. C. Radcliffe, an expert accountant, to examine into and 'report on all the affairs of the said copartnership' and to return the same to the court. Within due time the said accountant made his report to the court, and said report and all objections or exceptions thereto were heard and determined. Upon this report and the taking of further evidence ultimate findings were made, and these, together with the findings previously made, constitute the predicate for the final judgment which was rendered and entered in favor of the plaintiff and from which the present appeal is prosecuted by the defendant, Duncan.

[1] ''The respondent first makes the point that the interlocutory decree involved a full and final determination of all the issues raised by the pleadings and that it was, therefore, appealable; that the said defendant, having dismissed his appeal from said judgment or decree, cannot now have the same reviewed on an appeal from the final judgment. The proposition is, obviously, without merit. There are certain interlocutory decrees from which an appeal will lie by virtue of express authorization therefor by section 963 of the Code of Civil Procedure. But the case here does not come within the terms of said section. There may, however, be cases not coming within the purview of said section in which an interlocutory decree may involve a full, complete and definite adjudication of all the material

or vital issues of fact arising in the case. In such a case there is no sound reason why such a decree should not be appealable, and, indeed, we would say that it is, since, to all intents and purposes, it would amount to a final judgment. (See *Clark* v. *Dunnan,* 46 Cal. 204.) But this is not such a case. The interlocutory decree 'was based upon findings which determined none of the questions at issue except the fact of partnership and the existence of mutual and undetermined claims and demands, and upon a conclusion of law which declared no more than that an accounting was necessary. The decree, declared by the court itself to be "an interlocutory decree," appointed a referee to state an account, the settlement of which was essential to the fixing of the relative rights of the parties in the partnership property. Under all the authorities such a decree is not final.' (*Doudell* v. *Shoo,* 159 Cal. 448, 453 [114 Pac. 579, 581], and cases therein cited. See, also, *Gray* v. *Palmer,* 9 Cal. 636, and *Gianelli* v. *Brisco,* 40 Cal. App. 532 [181 Pac. 105].)

"Upon the merits, the appellant first contends that the remedy of the plaintiff, if any at all he had, was an action against the corporation to compel it to issue to him so much of its stock as his interest in the partnership entitled him to. These general contentions are also pressed: That certain findings are not supported by the evidence; that certain vital findings are inconsistent with each other; that the findings do not support the judgment and a failure to find on a material issue.

"The court found that the partnership between the plaintiff and the defendant Duncan was formed and existed as alleged in the complaint and continued to exist until on or about the first day of January, 1918; that the plaintiff and said defendant conducted said business under the firm name and style of Ford Garage and maintained places of business in the  counties of Plumas and Sierra as stated in the complaint; that certain real and personal property, together with certain leasehold interests for garage and shop purposes, were acquired by said copartnership and that the business was conducted under the joint management and control of the plaintiff and defendant Duncan; that the said Duncan at all times during the continuance of the business of the partnership had the custody of all

books and accounts relating to the business of said partnership and that said books and accounts were at all times kept and entries made therein by the said Duncan or under his direction; that the conveyances and leases of real property belonging to said partnership were taken for purposes of convenience in the name of said Duncan and were made in behalf of and for the benefit of the partnership; that the defendant proposed to plaintiff that the said partnership business which they were then conducting and had theretofore conducted as partners be incorporated under the laws of the state of California; that said corporation was formed and organized under the laws of said state under the name of Sierra Auto Supply Company, and that on or about the first day of January, 1918, said Duncan, with the knowledge and consent of the plaintiff, transferred and delivered to the said corporation all the property belonging to said partnership; that a full, complete and true account has been taken of all the business affairs and transactions of said partnership and that all the property belonging to said partnership during its existence having been sold and conveyed to the said corporation prior to the commencement of this action, there is not now any property of any kind or nature belonging to, or standing in the name of, the said partnership, and that said partnership has now no assets or liabilities; that the plaintiff, as a copartner in said business, was and is now entitled to one-half of all the profits earned and acquired by said partnership during its existence; that said partnership business was terminated upon the sale and transfer of its assets to said Sierra Auto Supply Company on January 1, 1918; 'that the defendant, W. H. Duncan, at various times, contributed capital in the sum of $24,000 for the operation of the business conducted by said copartnership, but that there was no agreement between said copartners for the payment of interest thereon.' It is alleged that the 'goodwill' of the business conducted by said plaintiff and defendant Duncan was at the time of the transfer of said business to the said corporation of the value of $12,500, and said that goodwill was an asset of said copartnership business at said time and that the plaintiff was at said time the owner of one-half of the value of said goodwill. The court found that the corporation was capitalized for $50,000, divided into 500 shares of

the par value of $100 per share, and that subsequently to its organization the said corporation issued to the defendant Duncan 496 shares of its capital stock at the par value of $100 per share. It was also found that during the existence of said partnership it was understood and agreed that the plaintiff should have and use from the funds thereof such sums as would be necessary for living and traveling expenses, and that plaintiff did, pursuant to said agreement, withdraw from said copartnership certain funds for his personal use, but that during the existence of said copartnership he withdrew from the funds thereof for his personal use in excess of said allowance and not expended by him for the benefit of said copartnership the sum of $9,293.41; that the defendant Duncan, during the existence of said partnership, withdrew from the funds of said partnership for his personal use and not by him expended for the benefit of said copartnership the sum of $1,198.41. It was found that during the time said copartnership was in existence the partnership earned and acquired in profits, over and above all expenses properly chargeable to said firm, the sum of $33,109.74; that plaintiff was and is now entitled to one-half of said net profits, to wit, the sum of $16,-554.87, of which he has received the sum of $9,293.41, leaving the balance now due him of $7,261.46, which, including one-half of the value of goodwill, aggregates the sum of $13,511.46; that by reason of the sale of the assets of said copartnership by the defendant W. H. Duncan to the Sierra Auto Supply Company, the said defendant has received for and on account of the interest of plaintiff in said copartnership the sum of $13,511.46. As conclusions of law the court declared the dissolution of said copartnership and found that the accounting taken before the court is a full and complete accounting of all the partnership affairs existing between plaintiff and defendant and that all interests of said copartners therein have been fully determined and settled; that there are no liabilities outstanding against said copartnership and that said copartnership has no assets or property, and that said partnership affairs have been fully wound up and closed; that the plaintiff is entitled to judgment against the defendant Duncan in the sum of $13,511.46; that the plaintiff take nothing against the defendant Sierra Auto Supply Company by reason of

this action. The judgment awards the plaintiff said amount together with interest at the rate of seven per cent per annum from and after the first day of January, 1918, to the date of the entry of the judgment on the thirtieth day of September, 1920, amounting to the sum of $2,600.98, making the total amount $16,112.44.''

In addition to the facts stated in the foregoing quotation from the opinion of the district court of appeal, the following facts may be stated:

It was found in the interlocutory decree that the partners had agreed to divide the profits of the business equally between them; that the defendant W. H. Duncan had advanced some of the capital, and that during the month of August, 1917, it had been agreed between the plaintiff and the defendant W. H. Duncan that the business conducted by them should be incorporated; that such corporation was formed under the name of the Sierra Auto Supply Company; that all of the property belonging to the copartnership was by mutual consent transferred to such corporation and that the corporation has since the 1st of January, 1918, been conducting said business. It was also found by the court that the defendant the Sierra Auto Supply Company is the owner of all the property sold, transferred and conveyed to it by the defendant W. H. Duncan. The interlocutory judgment recited that the partnership had never been dissolved and required the defendant W. H. Duncan to render an account.

These findings made at the time of the entry of the interlocutory decree were specially referred to and adopted in the final findings of the court. It was also found ''That the plaintiff, B. L. Clement, as such copartner was, and is now entitled to one-half of all the profits earned and acquired by the said copartnership during its existence.'' It was found also that the copartnership business was terminated by the sale and transfer of its assets to the Sierra Auto Supply Company, a corporation, on January 1, 1918.

[2] The fundamental error of the trial court was in rendering a personal money judgment in favor of B. L. Clement and against W. H. Duncan. It appears from the allegations of the complaint, which were admitted by the answer and also by the findings of the court, that the assets of the copartnership were sold by the copartnership to the

defendant corporation and that the entire stock of that corporation was issued in exchange for such property. It follows from this that whatever rights and interest the respective partners had in the partnership property was by mutual consent converted into the stock of that corporation and that the decree of the court should either have authorized a division of that stock in accordance with the respective interests of the copartners in the copartnership property or should have ordered the stock sold and the proceeds distributed in that proportion.

There was no express finding by the trial court as to the value of the property transferred by the copartnership to the defendant corporation. The court found that the profits of the copartnership were $33,109.74; that $10,491.82 of these profits have been distributed to the copartners; $9,293.41 having been distributed to the plaintiff and $1,198.41 to the defendant Duncan. The court also found that the value of the goodwill belonging to the copartnership was $12,500, and that the defendant W. H. Duncan had contributed $24,000 in capital to the copartnership. It was not expressly found whether any of this capital investment had been returned to W. H. Duncan. If no part of this capital had been returned to W. H. Duncan, then the property transferred to the defendant corporation included $22,617.90 undivided profits, $12,500 goodwill, which also represented an undivided profit or increment and $24,000, the amount of capital invested by Duncan; the total property value transferred by the copartnership to the corporation would be the sum of these items, amounting to $59,117.90. The respective interests of the copartners in their property thus transferred was as follows: Plaintiff's portion of this residue of the property would be his half interest in the goodwill, $6,250, plus the balance of his half of the profits not withdrawn, namely, $7,261.46. The defendant Duncan's share in this *residuum* would be $15,356.40 (being his half of the undivided profits, less $1,198.43 withdrawn), plus his one-half of the value of the goodwill, $6,250, and the capital of $24,000, making a total of $45,606.45. From these calculations it would follow that the 500 shares of stock of the defendant corporation should have been divided between the former partners in the proportion which $13,511.46 bears to $45,606.45 belonging to

the defendant. That is to say, the plaintiff was entitled to $13,511.58 divided by 59,117.90, multiplied by 500 shares, and the defendant Duncan was entitled to $45,606.45, divided by 59,117.90, multiplied by 500 shares. That is, the plaintiff would be entitled to 114.27 shares and the defendant to 385.72 shares.

A judgment might be entered upon the findings in accordance with the foregoing suggestion were it not for the fact that it is evident from the whole record that the trial court considered that the only question involved was the extent of the undivided profits, to one-half of which the plaintiff was entitled. The judgment did not undertake to fix the rights of the defendant Duncan except by inferentially holding that Duncan was entitled to · whatever was left after the plaintiff got all that he was entitled to.

In connection with a new trial and for the purposes thereof we adopt the following portion of the opinion of the district court of appeal:

[3] ''In connection with the proposition just disposed of, it should be stated that whether said Duncan is entitled to interest on the money which was advanced by him depends upon whether there was or was not an express agreement to that effect. The settled rule is stated as follows in *Tirrell* v. *Jones,* 39 Cal. 655, quoting the syllabus:

'' 'In a contract between two parties, in which it is conditioned that one shall advance the necessary funds in the execution of the contract, and the other his services, skill, and experience, and that each shall receive an equal portion of the profits, the party advancing the money is not entitled to interest on the same in the absence of any agreement that he should receive interest. (See, also, *Carpenter* v. *Hathaway,* 87 Cal. 434 [25 Pac. 549] ; *Price* v. *Olcovich,* 142 Cal. 47 [Ann. Cas. 1913A, 173, note, 75 Pac. 568].)'

[4] ''As a guide to the court in the retrial of the case, it is proper to say that as to interest on the overdrafts by the partners, the rule is as it is stated by Chief Justice Shaw in *Forsyth* v. *Butler,* 152 Cal. 396, 402, 403 [93 Pac. 90]. The rule, generally stated, seems to be that where a partner draws from the partnership funds to be applied to his own use and benefit an amount in excess of that which he is entitled to withdraw under the agreement of partnership, or any other agreement between the partners,

interest should be charged on such overdraft. This proposition depends on the condition on which, or the circumstances under which, the overdraft may be made. As to the overdrafts made by the plaintiff and the defendant Duncan in this case, the evidence is so unsatisfactory that we are unable to determine whether it was proper for the court to charge against the partners' interest on the amount drawn by each of them from the partnership fund in excess of what they were ·entitled to.

"The appellant challenges the finding relative to the goodwill of the partnership business. The court found that the goodwill of said business was of the value of $12,500. We cannot say that this finding is not supported. In fact, it is not necessary for us to go into the evidence for the purpose of determining that fact, since, as seen, the cause must be sent back for retrial on another ground. But we refer to the finding only because it seems to be the view of the appellant that goodwill did not enter as an element into the business affairs of the partnership, or, in other words, is not an asset of the partnership which may be taken into consideration in this case. [5] Under our code the goodwill of a business is property, transferable like any other, it being 'the expectation of continued public patronage.' (Civ. Code, secs. 992 and 993.) The transfer of the partnership business to the corporation necessarily involved a transfer of the goodwill of the business and it was proper for the court to consider and determine the value of said goodwill as an asset of the partnership in ascertaining and settling the value of the business and the profits which came therefrom in the years during which the partnership existed."

Judgment reversed, with instructions to the trial court to ascertain the relative rights of the parties in the stock of the defendant corporation and to partition such stock between the parties in accordance with their respective rights. The interlocutory finding and judgment that the plaintiff is entitled to one-half of the profits of the copartnership and that the relation between plaintiff and defendant W. H. Duncan was that of copartners to stand as a basis for the settlement of the account. The dividends derived from the stock, if any, to be divided in the same proportion as the stock, neither party to have any interest

upon the moneys due them unless upon a new trial the court, acting in pursuance of this opinion, finds that the defendant W. H. Duncan is entitled to interest upon the $24,000 capital advanced by him. If such interest is allowed, such interest shall be included in the amount going to the defendant W. H. Duncan from the copartnership at the time the property of the copartnership was transferred to the corporation and his share of the stock will be proportionately increased. No interest shall be allowed to either of the partners from and after the date of such transfer. The trial court may also determine what part of the $24,000 advanced by the respondent, if any, has been repaid, and shall proportionately diminish his share of the stock.

Waste, J., Kerrigan, J., Myers, J., Lawlor, J., Lennon, J., and Seawell, J., concurred.