[Civ. No. 4270.   Third Appellate District.—April 23, 1931.]

JOHN WILSON CORBETT, a Minor, etc., Respondent, v. LUCIENNE ANNE MENARD TODD CORBETT, Appellant.

Moote & Longeroft for Appellant.

Condee & Spencer for Respondent.

MR. JUSTICE THOMPSON (R. L.) DELIVERED THE OPINION OF THE COURT.—This is an appeal from a judgment annulling a marriage which was rendered in accordance with the provisions of subdivision 2 of section 82 of the Civil Code.

The defendant was previously married to Fred Todd. In a suit for divorce she was awarded an interlocutory decree of divorce from Todd, June 29, 1926. This plaintiff and defendant were married August 27, 1927. This suit for an annulment of the last marriage was commenced January 27, 1928. The final decree in the former suit for divorce had not then been rendered. On motion of this appellant, the final judgment of divorce was rendered in that action February 6, 1928. It directed that the decree be "entered *nunc pro tunc* as of July 2, 1927". The appellant's answer was then filed in the present case February 10, 1928. It denies that she was a married woman at the time of her marriage with the plaintiff. Upon trial of this case the court found that the final judgment of divorce was not rendered or entered

in the former action until February 6, 1928; that the appellant's former husband was then living, and that the previous marriage was in force at the time of the marriage which is involved in this case. A decree of annulment of the last marriage was accordingly rendered. From this judgment an appeal was perfected.

The appellant contends that the findings and judgment are not supported by the evidence for the reason that the final decree of divorce which was rendered in the former action on February 6, 1928, *nunc pro tunc* as of July 2, 1927, purports to restore this defendant to the status of an unmarried woman at the last-mentioned date, and that her subsequent marriage with the respondent is therefore valid. It is also asserted that the respondent is estopped from collaterally attacking the validity of the final judgment of divorce in the former action.

The judgment in this case is amply supported by the evidence. The appellant was not an unmarried woman when her marriage with the respondent was consummated August 27, 1927. The final decree of divorce was not rendered or entered in the former case until more than six months after the second marriage was consummated. The marital status of spouses is determined by the actual rendition and entry of the final judgment of divorce and not by the theoretical date of the decree which is fixed by a *nunc pro tunc* order regarding its entry. The court had no jurisdiction in the former suit for divorce to enter the final judgment of divorce *nunc pro tunc* so as to affect the personal or property rights of the respondent who was a stranger to that action.

The entry of an interlocutory decree of divorce is a mere judicial declaration that one of the parties to the action is entitled to a divorce. It does not dissolve the marriage nor restore the spouses to the status of unmarried persons. (Sec. 132, Civ. Code; 9 Cal. Jur. 773, sec. 121; *Estate of Boeson*, 201 Cal. 36, 40 [255 Pac. 800]; *Estate of Dargie*, 162 Cal. 51 [121 Pac. 320]; *In re Newman*, 88 Cal. App. 186 [262 Pac. 1112].) A final judgment of divorce may not be rendered until one year has elapsed after the actual entry of the interlocutory decree. The actual date of the entry of the interlocutory decree controls its effectiveness, and not the theoretical date which is fixed by a

*nunc pro tunc* order respecting its entry. In refusing a petition for a writ of *mandamus* to compel a court to enter a final judgment of divorce more than one year after the *nunc pro tunc* date fixed by the decree, but less than one year after the actual rendition and entry of the final decree, the Supreme Court said in the case of *Claudius* v. *Melvin,* 146 Cal. 257 [79 Pac. 897] : "The year which must elapse before final judgment can be given begins to run from the time of the actual entry of the interlocutory judgment, and not from any theoretical *nunc pro tunc* date of entry."

■ Until the final judgment of divorce has been actually rendered and entered the spouses are not restored to their status of unmarried persons. Until this final decree has been actually rendered and entered the spouses are disqualified from remarrying. It follows that a marriage which is consummated by a divorced person to the rendition of his final decree of divorce, is absolutely void, and may be annulled on that ground. (Sec. 82, subd. 2, Civ. Code; *In re Eichhoff,* 101 Cal. 600 [36 Pac. 111].) ■ Section 132 of the Civil Code provides: "When one year has expired after the entry of such interlocutory judgment, the court, on motion of either party, or upon its own motion, may enter the final judgment granting the divorce, and such final judgment shall restore them to the status of single persons, and permit either to marry *after the entry thereof.*"

This language clearly prohibits a person from remarrying until after the actual rendition and entry of his final judgment of divorce. Similar to the entry of the interlocutory decree above referred to in the case of *Claudius* v. *Melvin,* it is the actual date of the entry of the final judgment of divorce which fixes the status of the spouses as single persons. The court is barred by the provisions of this statute from fixing a fictitious date by means of a *nunc pro tunc* order which will establish the marital status of the spouses or authorize them to remarry prior to the actual date of the entry of the final judgment of divorce. This construction of the foregoing language of section 132 is given added force by reference to the last provision of that section, which reads: "The death of either party after the entry of the interlocutory judgment does not impair the power of

the court to enter final judgment as hereinbefore provided; but such entry shall not validate any marriage contracted by either party *before the entry of such final judgment,* nor constitute any defense of any criminal prosecution made against either.''

It may be conceded the actual rendition and entry of the final judgment of divorce between the appellant and her former husband on February 6, 1928, finally terminated their marriage on that date, and that so far as the marital status between them is concerned, it constituted a judicial termination of their marriage which is binding on the whole world. (*Estate of Lee,* 200 Cal. 310 [253 Pac. 145].) But with respect to the *nunc pro tunc* feature of this decree, which purports to create a fictitious date of entry so as to establish the status and legalize the marriage of the spouses at a prior date, contrary to the statute, this clause is unauthorized and void.

The result of a valid *nunc pro tunc* decree is to antedate the effect of the judgment. This is authorized only to prevent injustice, and may not be done to the injury of strangers to the record. (14 Cal. Jur. 935, sec. 42.)

In proper cases, a court has inherent power to enter judgments *nunc pro tunc* both in law and in equity. This ancient authority is based upon the maxim that ''a delay of the court shall prejudice no one''. The cases in which decrees may be properly entered *nunc pro tunc* are divided into two classes. The first class includes those cases in which the litigation is entirely completed and ready for determination, but the decision is delayed through no fault of the parties. The second class is composed of those cases in which judgment has been formally rendered, but through the inadvertence of the ministerial officers, it has not been entered or placed of record. (1 Freeman on Judgments, 5th ed., p. 222, sec. 122.) In the authority last cited, at page 222, it is said: ''No case could be ranked among the first class in which the delay to render or enter the judgment was imputable to any negligence or even misapprehension of the parties.''

In the present case the final judgment of divorce was not actually rendered until February 6, 1928. There was no affirmative application for this decree until that

date. This delay was certainly due to the negligence of the parties. This case, therefore, does not belong to that class which authorizes the entry of a final decree of divorce *nunc pro tunc.*

■ Moreover, the personal status and the property interests of the plaintiff in this case were affected thereby. A *nunc ppro tunc* order to enter a final decree of divorce may not be made so as to injure the rights of a third party who is without notice of the rendition of the judgment. In 34 C. J. 73, section 211, it is said: "The object of allowing entries *nunc pro tunc* being the furtherance of justice, such entries will not be allowed where they will prejudice the rights of third parties who are without notice of the original rendition of the judgment." (1 Freeman on Judgments, p. 261, sec. 138.)

■ It is true that a judgment of divorce which is not void on its face may not be impeached collaterally. (9 Cal. Jur. 750, sec. 103.) But a judgment which is void on its face, is a mere nullity, and may be collaterally attacked. In 1 Freeman on Judgments, page 643, section 322, it is said: "A judgment void upon its face and requiring only an inspection of the record to demonstrate its invalidity is a mere nullity, in legal effect no judgment at all, conferring no right and affording no justification."

So, also, a judgment which appears upon its face to be partially void, may be challenged collaterally with respect to the void provision when it can be readily severed from the valid portion thereof. In 1 Freeman on Judgments, at page 648, section 324, it is said: "With respect to the relief granted a judgment is likewise divisible. It may be good in part and bad in part. As to some of the relief it may be wholly worthless and at the same time be free from invalidating faults as to other matters adjudicated. If the void portion of the judgment does not infect the whole with invalidity and may be separated from the remainder and treated as surplusage, the judgment will not be avoided *in toto,* but will be upheld as to that portion which was within the jurisdiction and power of the court to render."

■ Pursuant to the foregoing rule, it is apparent that the final .judgment of divorce which is involved in the present case is valid upon its face, with the exception of the clause therein contained which purports to direct that the

decree shall be entered *nunc pro tunc* as of a previous date. This *nunc pro tunc* order is severable from the balance of the decree. The court was without authority to make such order. That portion of the decree is therefore void. The balance of the judgment may still remain in full force.

The judgment is affirmed.