[Civ. No. 5963. Third Appellate District.—November 22, 1938.]

AUGUST MACEDO, Appellant, v. MARY MACEDO, Respondent.

Kenneth I. Jones for Appellant.

Howe, Hibbitt & Johnston and O. F. Meldon for Respondent.

PULLEN, P. J.—These parties were married in February, 1932, and lived together until 1936, when they separated. Appellant herein, as plaintiff, then brought an action to annul the marriage upon the ground that at the time of marriage Mary Macedo had a husband then living.

It was true that at the date of the marriage between the parties hereto a former marriage between defendant herein and one Moreira was undissolved. An action for divorce had been instituted and an interlocutory decree had been entered September 10, 1930.

The complaint in this action seeking annulment was filed November 6, 1936. On November 16, 1936, defendant Mary Macedo procured the entry of the final decree in the Moreira case. She then filed her answer in the annulment action,

alleging such entry of the final decree. The trial court refused to annul the marriage and held the same valid. This appeal followed.

Respondent contends the trial court was correct and her marriage was valid by virtue of the retroactive operation of the final decree entered under the terms of section 133 of the Civil Code. This section, enacted in 1935, provides:

"Entry of Final Judgment Nunc Pro Tunc: Effect of such Entry; Marriage Subsequent to Interlocutory Judgment Validated. Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed or entered, if no appeal has been taken from the interlocutory judgment or motion for a new trial made, the court, on motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for. Upon the filing of such judgment, the parties to such action shall be deemed to have been restored to the status of single persons as of the date affixed to such judgment, and any marriage of either of such parties subsequent to one year after the granting of the interlocutory judgment as shown by the minutes of the court, and after the final judgment could have been entered under the law if applied for, shall be valid for all purposes as of the date affixed to such final judgment upon the filing thereof."

The first point urged by appellant is that there never was a valid marriage between the parties hereto, the attempted marriage having been void from its inception, because as required by section 55 of the Civil Code "marriage is a personal relation arising out of a civil contract to which the consent of the parties capable of making that contract is necessary".

Appellant further contends that while the final decree is valid between the parties to the Moreira marriage, it is not binding upon Macedo, appellant here, a stranger to the proceedings. Also that section 133 of the Civil Code is not retroactive to validate a void marriage, and if so, then it is unconstitutional.

It will be recalled that prior to 1897 a decree of divorce was obtainable in the ordinary course of a civil action with-

out any interlocutory order. Abuses arose which impelled the legislature in 1897 to enact section 61 of the Civil Code, taking from divorced persons the right to remarry within one year after the entry of the decree of divorce. This inhibition, operating only upon marriages contracted within the state, came to be evaded by persons going beyond the boundaries of California to effect their subsequent marriage. In 1903 the legislature, to correct this, enacted section 132, providing for an interlocutory decree.

This was effective in setting an interval of time between the divorce and a subsequent marriage, but sometimes circumstances arose by reason of an oversight in obtaining the entry of the final decree. Marriages were entered into in ignorance of this omission, and the rights of children and of property were sometimes affected.

In 1931 this court in *Corbett* v. *Corbett*, 113 Cal. App. 595 [298 Pac. 819], was compelled by the statute as it then stood to hold that the misfortune of such omission could not be corrected by the entry of the final decree, *nunc pro tunc.*

In 1935, the legislature to correct this situation and to moderate the harshness of the effect of such oversight, enacted section 133 of the Civil Code, which we are now considering. That the legislature has power to legislate upon this subject is not questioned.

Appellant raises some question of the constitutionality of the section in that the retroactive operation of the section takes from him some vested right.

The term "vested right" was discussed in *Stohr* v. *San Francisco Musical Fund Society*, 82 Cal. 557 [22 Pac. 1125], as follows:

"The term 'vested right' is often loosely used. In one sense every right is vested. If a man has a right at all, it must be vested in him; otherwise how could it be a right? The moment a contract is made, a right is vested in each party to have it performed. The term, however, is frequently used to designate a right which has become so fixed that it is not subject to be divested without his consent, as contradistinguished from rights which are subject to be divested without his consent. Now, a right, whether it be of such a fixed character or not, must be a right to something. And when a man talks vaguely of his vested right, it conduces to clearness to ask: a vested right is what?"

The act is both curative and remedial, and the retroactive operation of such statute should be given effect unless it disturbs some vested right or impairs the obligation of some contract. (*Baird* v. *Monroe,* 150 Cal. 560 [89 Pac. 352]; 1 Kent's Comm. 455.)

Here, however, we can perceive no vested rights in appellant. He had no vested right to dissolve his marriage status in any particular manner. In fact it would be the tendency of the law to validate the marriage rather than to find ways of destroying it. It confirms rather than impairs the contract. Acts validating invalid contracts have been sustained where the act goes no further than to bind a party to a contract which he has attempted to enter into but which was invalid by reason of some personal inability or through neglect of a legal formality. Such are questions of policy rather than constitutional power. (Cooley on Const. Limitations, sec. 374.)

In *Dentzel* v. *Waldie,* 30 Cal. 139, the court upheld an act which gave effect to a contract made in good faith by which defendant attempted to pass title but which failed because the proper legal forms were not observed. The same power which prescribed those forms may waive noncompliance. So, section 133 of the Civil Code cannot be said to impair any contract. Plaintiff was not seeking to enforce the marriage contract. He is deprived of no property or no beneficial opportunity. Denial results in no injustice.

Appellant quotes sections 132 and 133 of the Civil Code and attempts to find a conflict in their provisions. Section 132 of the Civil Code provides that (referring to final decree) "such entry shall not validate any marriage contracted by either party before the entry of such final decree".

This language seems to refer to a marriage before the end of the year after the entry of the interlocutory judgment, and not to the *nunc pro tunc* provisions of section 133 of the Civil Code.

Furthermore, when two laws upon a cognate subject passed at different times are inconsistent with each other, the one first passed must yield to the latter. (*Estate of Wixom,* 35 Cal. 320.)

Section 133 of the Civil Code is both remedial and curative in character. It is remedial in that it provides for judicial action in a pending matter in furtherance of the relief prayed for. It is curative in that it makes valid a marriage which otherwise was invalid by a *nunc pro tunc* decree.

That the act was intended to be retroactive is manifest from the express language used as well as by implication, and as pointed out above, although the section is retroactive in its operation it violates no constitutional restriction.

■ Lastly appellant claims the final decree as entered in the Moreira case did not conform to section 133 of the Civil Code. The final decree provides that the marriage is dissolved and restores the parties to the status of single persons and permits them to remarry upon the entry of the decree, as of the date when the same could have been given and made by the court if applied for, to wit: September 11, 1931. This decree was dated November 16, 1936. Section 133 of the Civil Code provides that "the decree be signed, dated and filed and entered . . . as of the date when the same could have been given and made by the court if applied for".

We are of the opinion, however, counsel is in error in his contention. The decree itself has found that September 11, 1931, was the date when the decree could have been entered and that is the date "affixed" to the final judgment.

The judgment from which this appeal is taken should be affirmed, and it is so ordered.

Thompson, J., and Steel, J., *pro tem.*, concurred.