[Civ. No. 20974.   Second Dist., Div. Three.   Mar. 20, 1956.]

ERNEST V. BERRY, Plaintiff and Appellant, v. BLANCHE BEATRICE BERRY, Defendant and Appellant.

Rogan & Rogan, Raymond R. Farrell and Frederick I. Frischling for Plaintiff and Appellant.

Jerry Giesler and Harold C. Holland for Defendant and Appellant.

VALLEE, J.—These are cross-appeals. Defendant appeals from a final decree of divorce; from an order adjudging plaintiff not to be in contempt; and from orders directing that an accounting be taken to determine half the net earnings of plaintiff from his personal services from January 1, 1950, to December 31, 1951, and other gains of his attributable to his energy, ability, and capacity from the operation of his business for the period from January 8, 1951, to July 7, 1953, to determine the community property, if any, appointing an auditor, fixing his fees, and awarding attorney's fees. Plaintiff appeals from part of the order directing that an accounting be taken.

On January 8, 1951, an interlocutory decree was entered granting defendant, as cross-complainant, a divorce from plaintiff. The decree ordered plaintiff to pay defendant for her support and maintenance $150 a month for 12 months only. It ordered plaintiff to pay defendant $39,410, described as community property, in 36 equal monthly installments "without interest, and in addition thereto cross-complainant shall be and is awarded ½ of plaintiffs net earnings from his personal services from January 1st, 1950 to December 31, 1951." Defendant appealed from the property provisions of the interlocutory decree. The decree was affirmed. (*Berry* v. *Berry,* 117 Cal.App.2d 624 [256 P.2d 646].) The remittitur was filed in the superior court on July 7, 1953.

On May 12, 1954, on application of defendant, two orders to show cause issued: one directing plaintiff to show cause why he should not be adjudged in contempt for failing to pay $660, the balance of the $39,410 he was ordered to pay defendant by the interlocutory decree, and for failing to render an accounting of his net earnings from his personal services for the period from January 1, 1950, to December 31, 1951, and for attorney's fees incident to a hearing on that order; the other directing plaintiff to show cause why he should not render an accounting "to determine the community property, if any, attributable to the personal character, energy, ability and capacity of Mr. Berry, where he has contributed his personal services to the operation of the business" for the period from January 1, 1950, to the entry of the final decree, which had not then been entered, and for attorney's fees and costs incident to that order. On July 7, 1954, plaintiff filed a notice of motion to enter a final decree *nunc pro tunc* as of January 9, 1952, which date was just one year after

entry of the interlocutory decree. The ground of the motion was that the interlocutory decree was entered January 8, 1951, that all the provisions of the decree had been executed save one, and that a hearing to enforce that provision was pending.

Prior to the hearing of the orders to show cause plaintiff paid defendant the $660. The orders to show cause and the motion were heard together commencing on July 20, 1954. The minutes of July 20, 1954, say, "On the courts own motion the matter of the payment of $660.00 as related to the contempt action is dismissed." Plaintiff withdrew his motion for the entry of a final decree *nunc pro tunc* as of January 9, 1952, and moved that it be entered as of July 7, 1953, the date the remittitur on the appeal from the interlocutory decree was filed in the superior court.

On July 21, 1954, the court, by minute order, granted plaintiff's motion to enter the final decree *nunc pro tunc* as of July 7, 1953, and ordered "that an accounting be taken to determine ½ the net earnings of the plaintiff for personal services from January 1, 1950, till December 31, 1951, and the gains attributable to the energy, ability and capacity of Mr. Berry from the operation of the business from January 8, 1951, to July 7, 1953, to determine the community property, if any." On July 22, 1954, by minute order, the court granted defendant's motion for an audit of plaintiff's books from January 1, 1950, until July 7, 1953, appointed an auditor "to make the accounting," ordered plaintiff to pay the auditor $1,875, and ordered plaintiff to pay defendant's attorney $1,000 for his services in the proceeding. On July 28, 1954, the final decree was entered as previously ordered. It assigns the property of the parties in accord with the interlocutory decree and contains this provision:

"It is further ordered and adjudged that pursuant to paragraph VIII of said interlocutory judgment, plaintiff pay to defendant one-half of plaintiff's net earnings, if any, from his personal services from January 1, 1950, to December 31, 1951, and it is further ordered that an accounting be had to determine the amount due, if any, under this provision of this judgment." No mention is made in the final decree of that part of the minute order of July 21 requiring plaintiff to account for gains attributable to his energy, ability, and capacity from the operation of his business for the period from January 8, 1951, the date of entry of the interlocutory decree, to July

7, 1953, the retroactive date of entry of the final decree, nor is mention made of the order of July 22 granting defendant's motion for an audit and appointing an auditor.

## Appeal of Defendant

Defendant's claim is that it was error to enter the final decree *nunc pro tunc* in the absence of a showing of mistake, negligence, or inadvertence; that the final decree should have been entered at the time of the determination of the accounting for determination of community property, if any, accumulated after the interlocutory decree. Plaintiff replies that the court properly entered the final decree *nunc pro tunc* as of the date the remittitur was filed in the superior court, namely, July 7, 1953, and that the period of accounting should have been confined to the period set out in the interlocutory and final decrees, namely, from January 1, 1950, to December 31, 1951. It is not contended the final decree was entered pursuant to the inherent power of a court to antedate a judgment under certain circumstances. (See *Mather* v. *Mather*, 22 Cal.2d 713, 719 [140 P.2d 808] ; *Phillips* v. *Phillips*, 41 Cal.2d 869, 875 [264 P.2d 926] ; *Corbett* v. *Corbett*, 113 Cal.App. 595, 600 [298 P. 819].)

Civil Code, section 132, provides:

"When one year has expired after the entry of such interlocutory judgment, the court on motion of either party, or upon its own motion, may enter the final judgment granting the divorce . . . and such other and further relief as may be necessary to complete disposition of the action, but if any appeal is taken from the interlocutory judgment or motion for a new trial made, final judgment shall not be entered until such motion or appeal has been finally disposed of, nor then, if the motion has been granted or judgment reversed."

Civil Code, section 133, provides:

"Whenever either of the parties in a divorce action is, under the law, entitled to a final judgment, but by mistake, negligence or inadvertence the same has not been signed, filed and entered, if no appeal has been taken from the interlocutory judgment . . . the court, on the motion of either party thereto or upon its own motion, may cause a final judgment to be signed, dated, filed and entered therein granting the divorce as of the date when the same could have been given or made by the court if applied for."

*Nolte* v. *Nolte*, 29 Cal.App. 126 [154 P. 873], and *Harris* v. *Superior Court*, 10 Cal.App.2d 586 [52 P.2d 605], held the

56

court had no power to enter an interlocutory decree *nunc pro tunc* as of a prior date.[1]   In *Corbett* v. *Corbett,* 113 Cal.App. 595 [298 P. 819], decided prior to the enactment of section 133 in 1935, the interlocutory decree was entered June 29, 1926.   There was no appeal.   The final decree was rendered February 6, 1928.   It directed that it be entered *nunc pro tunc* as of July 2, 1927.   It was held the trial court had no authority to make the *nunc pro tunc* order and that it was void.   A marriage of one of the spouses between entry of the interlocutory decree and actual entry of the final decree was held void.   It would appear that section 133 was enacted to avoid recurrence of the result in the Corbett case.   (*Estate of Hughes,* 80 Cal.App.2d 550, 553 [182 P.2d 253] ; *Macedo* v. *Macedo,* 29 Cal.App.2d 387, 390 [84 P.2d 552].)

Speaking of section 133, the court, in *Macedo* v. *Macedo, supra,* 29 Cal.App.2d 387, said (p. 391) :

"The act is both curative and remedial, and the retroactive operation of such statute should be given effect unless it disturbs some vested right or impairs the obligation of some contract."

When an interlocutory decree of divorce becomes final it is res judicata on all questions determined thereby including, generally, the rights of the parties in community property then existing.   (*Dupont* v. *Dupont,* 4 Cal.2d 227, 228 [48 P.2d 677] ; *Leupe* v. *Leupe,* 21 Cal.2d 145, 148 [130 P.2d 697].)

An interlocutory decree does not terminate the marriage relation.   The interest of the wife in community property during continuance of the marriage relation is a present, existing interest.   (Civ. Code, § 161a.)   It is a vested interest. (*Cooke* v. *Cooke,* 65 Cal.App.2d 260, 265-266 [150 P.2d 514] ; *Wissner* v. *Wissner,* 89 Cal.App.2d 759, 764 [201 P.2d 837] ; *Horton* v. *Horton,* 115 Cal.App.2d 360, 363-364 [252 P.2d 397] ; *Estate of Kelley,* 122 Cal.App.2d 42 [264 P.2d 210].)

Hence property acquired by one of the spouses in the interim between the interlocutory and final decrees may be community property when it is not acquired as the separate property of either.   (Civ. Code, § 687 ; *Brown* v. *Brown,* 170 Cal. 1, 4 [147 P. 1168] ; *Hiltbrand* v. *Hiltbrand,* 13 Cal.App. 2d 330, 334-335 [56 P.2d 1292] ; *Babcock* v. *Babcock,* 63 Cal. App.2d 94, 101 [146 P.2d 279] ; *Franklin* v. *Franklin,* 67 Cal. App.2d 717, 720-721 [155 P.2d 637].)   In the present

[1]These cases were decided before section 131.5 was added to the Civil Code in 1939 authorizing the granting of an interlocutory decree *nunc pro tunc* under certain circumstances.

case the interlocutory decree made a complete disposal of the property rights of the parties then existing. An appeal was taken from that decree and it was affirmed. When affirmed, it constituted a conclusive adjudication of all rights of the parties in all community property existing on the date of its entry. (*Wilson* v. *Wilson,* 76 Cal.App.2d 119, 130 [172 P.2d 568]; see 16 Cal.Jur.2d 408, §§ 119, 120.) The interlocutory decree did not purport to adjudicate property rights that might be acquired after its entry, and it should not be so construed. (*Webster* v. *Webster,* 216 Cal. 485, 493 [14 P.2d 522]; *Davis* v. *Davis,* 123 Cal.App.2d 753, 756-757 [267 P.2d 403].)

Both parties rely on *Harrold* v. *Harrold,* 43 Cal.2d 77 [271 P.2d 489]. In Harrold the interlocutory decree was entered on February 15, 1949. An appeal was taken from the financial provisions of the decree only. The judgment on appeal was "the interlocutory judgment is affirmed, except . . . as to that portion relating to a division of the community estate, which is remanded to the trial court with instructions to determine the division of the amount of the community estate as indicated herein." (*Harrold* v. *Harrold,* 100 Cal.App.2d 601, 609 [224 P.2d 66].) Following retrial of the issue specified, the court ordered that the final decree be entered on November 1, 1951, the day of the judgment on the retrial. It was entered accordingly. It divided the community property acquired by the parties prior to the date thereof. The plaintiff appealed from that part of the final decree awarding her part of the community property. The Supreme Court said it was held on the prior appeal "that the trial court should have considered the earnings of the defendant accruing prior to the entry of the final decree in determining the community estate." (*Harrold* v. *Harrold,* 43 Cal.2d 77, 79 [271 P.2d 489].) One of the contentions on the second appeal was "that under the mandate on the prior appeal the trial court erred in not entering a new interlocutory decree, and in entering the final decree on November 1, 1951." The court declared (p. 83):

"Section 132, as interpreted by the Webster and other cases, provides that the final decree cannot be entered at certain designated times but it does not specify when it may be entered following a reversal on appeal. Here it was entered on the same day as the judgment on retrial of the designated financial issues. Neither section 132 nor the cases construing it expressly prohibit the entry at that time. The

question is whether the Legislature intended by implication or otherwise to delay the entry of the final judgment beyond such a time, when it enacted the section. . . .

"[P. 84.] We are not concerned in the present case with an appeal from the interlocutory decree as such. That decree, insofar as it ordered the dissolution of the bonds of matrimony, was affirmed and became the law of the case. Any question in connection therewith was and is no longer open, including the right to the final decree as affected by property matters. Such matters, involving items of the additional accounting period and the pro rata division of the community property, were adjudicated on the subsequent hearing as directed by the District Court of Appeal. This appeal from that adjudication does not in any proper sense constitute an appeal as contemplated by the Legislature in enacting section 132 such as would stay the entry of the final decree, since none of the stated purposes of such a stay are here applicable. [Citations.]

"From the foregoing it is apparent that there is no sufficient reason why the trial court should delay the entry of the final decree beyond the express prohibitions of section 132. Furthermore there appears to be good reason for its entry at the time of judgment in the accounting determination. If, as the plaintiff seeks to accomplish, the prohibitions of section 132 are applied to the present appeal in the same manner as to the interlocutory decree heretofore affirmed, the final decree could not be entered until any appeal taken herefrom had been determined or the time for appeal had expired. . . .

"[P. 85.] There is nothing in section 132 of the Civil Code, nor in the cases dealing with the problem, which indicates that under the circumstances here presented a new interlocutory decree should be entered." As we read the Harrold case (43 Cal.2d 77), it holds that a final decree may be entered at any time when one year has expired after the interlocutory decree has become final, and indicates there is good reason for its entry at the time of judgment in an accounting determination after the year has expired. It does not pass on when a final decree may be entered *nunc pro tunc*.

■ The remittitur on the appeal from the interlocutory decree in the present case was filed in the superior court on July 7, 1953. The final decree could not have been entered prior to that date. (Civ. Code, § 132.) No application for entry of the final decree was made until July 20, 1954. In support of his motion for a final decree *nunc pro tunc*, plain-

tiff filed an affidavit substantially in the form provided by Rule 20 of the Rules for Superior Courts. (33 Cal.2d 9, 10.) Rule 20 provides that an affidavit for a final decree of divorce shall state that all the requirements of the interlocutory decree have been fully complied with on the part of the moving party and he is not in default in any thereof. The rule also provides that the affidavit shall contain substantially the information in the form prescribed "or so much thereof as the court under the circumstances may require." The affidavit of plaintiff stated he had not complied with that part of the interlocutory decree awarding defendant half of his net earnings from his personal services from January 1, 1950, to December 31, 1951, "it being contended by affiant that there were no earnings from personal services during said period and affiant therefore having fully complied with the interlocutory judgment." There was nothing in the affidavit, nor was there any evidence introduced at the hearing, showing that the final decree had not been signed, filed and entered "by mistake, negligence or inadvertence" during the interim between July 7, 1953, and July 20, 1954. Unless it may be held that the mere failure to have the final decree signed, filed and entered within that interim constitutes "mistake, negligence or inadvertence," it was error to enter it *nunc pro tunc* as of July 7, 1953. Civil Code, section 133, is the sole authority for the entry of a final decree *nunc pro tunc* where on the facts the court is without inherent power to enter such a decree. It may be that it is the only authority—a question we need not decide. ■ There must be a showing of mistake, negligence, or inadvertence. (*Cf. Hull* v. *Hull,* 102 Cal. App.2d 382 [227 P.2d 546]; *Nemer* v. *Nemer,* 117 Cal.App.2d 35 [254 P.2d 661].) In the absence of such a showing the court is without power to enter the final decree *nunc pro tunc.* ■ "A mistake of fact is when a person understands the facts to be other than they are; a mistake of law is when a person knows the facts as they really are but has a mistaken belief as to the legal consequences of those facts. (*People* v. *Kelly,* 35 Cal.App.2d 571, 574 [96 P.2d 372].) ■ Inadvertence is defined as lack of heedfulness or attentiveness, inattention, fault from negligence. (Webster's New Inter. Dict., 2d ed.; *Greene* v. *Montana Brewing Co.,* 32 Mont. 102 [79 P. 693, 694].)" (*Baratti* v. *Baratti,* 109 Cal.App.2d 917, 921 [242 P.2d 22].) ■ Negligence may be passive in character: it may consist in heedlessly refraining from doing

the proper thing. When the circumstances call for activity, one who does not do what he should is negligent. (*Basler* v. *Sacramento Gas & Elec. Co.*, 158 Cal. 514, 518 [111 P. 530, Ann.Cas. 1912A 642].) Negligence is sometimes defined as the failure to use ordinary care in the management of one's person or property. (*Jolley* v. *Clemens*, 28 Cal. App.2d 55, 66 [82 P.2d 51].) The essence of negligence is the failure to exercise due care and take proper precaution in a particular case. (*Davidson* v. *American Liquid Gas Corp.*, 32 Cal.App.2d 382, 386 [89 P.2d 1103].) In determining the presence or absence of negligence the test is: what would a reasonably prudent person do under similar circumstances? (*Martin* v. *Fox West Coast Theatres Corp.*, 41 Cal.App.2d 925, 930 [108 P.2d 29].) Negligence always relates to some circumstance of time, place, or person. (*Spear* v. *Leuenberger*, 44 Cal.App.2d 236, 246 [112 P.2d 43].)

There is no rule of law which compels a party to apply for a final decree and the circumstances may be such that a party does not wish to apply for one. Many factors may prompt inaction, i.e., there may have been a reconciliation or there may be hope of one. There was no showing in the present case of any mistake or inadvertence; or of any circumstances which called for activity on the part of plaintiff between July 7, 1953, and July 20, 1954; or of failure on his part to exercise ordinary care; or that a reasonably prudent person would have applied for the final decree within that period. In short, there was no showing of "mistake, negligence or inadvertence." The mere failure of a party to apply for a final decree does not constitute mistake, negligence, or inadvertence. Defendant had a vested right in community property acquired subsequent to the entry of the interlocutory decree and such right could not be divested by entry of the final decree *nunc pro tunc* without a showing of mistake, negligence, or inadvertence. The court erred in entering the final decree *nunc pro tunc* as of July 7, 1953.

The order adjudging plaintiff not to be in contempt is nonappealable and the appeal therefrom will be dismissed. (*John Breuner Co.* v. *Bryant*, 36 Cal.2d 877 [229 P.2d 356].)

As we have noted, defendant also appealed from the order which she describes as requiring "an accounting to be taken of the net earnings of plaintiff and cross-defendant from his personal services and other gains attributable to his energy, ability and capacity from the operation of his business for

the period January 1, 1950 to July 7, 1953.'' No complaint is made insofar as the order required plaintiff to account for his net earnings from his personal services for the period from January 1, 1950, to December 31, 1951. By that proceeding defendant merely sought to enforce the interlocutory decree which had then become final. (See *Becker* v. *Becker*, 36 Cal.2d 324, 326 [223 P.2d 479].) ▆▆▆ Insofar as the order requires an accounting of the gains attributable to the energy, ability and capacity of plaintiff from the operation of his business from January 8, 1951, to July 7, 1953, to determine the community property, if any, it is nonappealable and the appeal therefrom must be dismissed.

▆▆▆ It has long been settled that no appeal lies from an interlocutory or intermediate order unless the order be designated by statute as one of those from which an appeal may be taken. (*Title Ins. & Trust Co.* v. *California Dev. Co.*, 159 Cal. 484, 486 [114 P. 838].) There is no statute authorizing an appeal from an order of the nature of that requiring an accounting of gains attributable to plaintiff's energy, ability, and capacity from the operation of his business. ▆▆▆ Where the order requires the payment of money by the party complaining, or the doing of an act by or against him, the order is in effect final as against such party and may be appealed from by him. If on the other hand the order be in its nature such as to be subject, before enforcement or execution, to the further action of the court, either by decree or later order, the order complained of is not final and review must be sought by appeal from the decree or order subsequently entered. (*Id.* 491.) ▆▆▆ When an order directs an accounting, fixes no rights of the parties, contemplates that the accounting shall be returned to the court, and when further judicial action is necessary even though not specified in the order, the determination is not a final judgment and the order is not appealable. The foregoing is true whether the order for an accounting is proper or erroneous. (*Doudell* v. *Shoo*, 159 Cal. 448, 453 [114 P. 579] ; *Clement* v. *Duncan*, 191 Cal. 209, 215 [215 P. 1025] ; *Gunder* v. *Gunder*, 208 Cal. 559, 561 [282 P. 794] ; *Di Blasi* v. *Di Blasi*, 209 Cal. 753 [290 P. 7] ; *Middleton* v. *Finney*, 214 Cal. 523, 525-526 [6 P.2d 938, 78 A.L.R. 1104] ; *Sjoberg* v. *Hastorf*, 33 Cal.2d 116, 119 [199 P.2d 668] ; *Lacey* v. *Bertone*, 33 Cal.2d 649, 653 [203 P.2d 755] ; *In re Los Angeles County Pioneer Soc.*, 40 Cal.2d 852, 857-858 [257 P.2d 1] ; *Shirley* v. *Cook*, 119 Cal.

App.2d 220, 222 [259 P.2d 25]; 15 So.Cal.L.Rev. 504; anno.: 3 A.L.R.2d 342.)

The order complained of did not direct the payment of any money by plaintiff (cf. *Grant* v. *Superior Court*, 106 Cal. 324 [39 P. 604]; *Grant* v. *Los Angeles etc. Ry. Co.*, 116 Cal. 71 [47 P. 872]), nor did it direct the performance of any act by or against him. It did not finally determine any rights. It required further judicial action. It contemplated a future determination of whether any community property had been acquired in the interim between the interlocutory and the final decrees and, if there was any, how it should be divided. If the order is erroneous, as defendant contends, she may assert it on appeal from the final order after the accounting. (See *Clement* v. *Duncan*, 191 Cal. 209, 215 [215 P. 1025].)

### Appeal of Plaintiff

Plaintiff only appealed from that part of the minute order of July 21, 1954, requiring an accounting of "the gains attributable to the energy, ability and capacity of Mr. Berry from the operation of the business from January 8, 1951, to July 7, 1953, to determine the community property, if any." For the reasons we have stated on defendant's appeal from that order, it is nonappealable and the appeal therefrom must be dismissed.

The appeal from the order adjudging plaintiff not to be in contempt is dismissed; the appeals of plaintiff and defendant from the order directing an accounting of the gains attributable to the energy, ability and capacity of plaintiff from the operation of his business from January 8, 1951, to July 7, 1953, to determine the community property, if any, are dismissed; the order directing that an accounting be taken to determine half the net earnings of plaintiff from his personal services from January 1, 1950, to December 31, 1951, is affirmed; the final decree is reversed. Plaintiff shall bear defendant's costs on appeal.

Shinn, P. J., and Wood (Parker), J., concurred.