## BELT *vs.* DAVIS.

By a final judgment is to be understood, not a final determination of the rights of the parties in the subject matter of the litigation, but merely of the particular suit.

Thus, where a judgment was rendered in the court of First Instance, and the defendant filed a complaint in the district court to vacate and annul the judgment on the ground of fraud, &c., to which an answer was put in, and the cause tried in the district court, and judgment given in accordance with the prayer of the complaint; *held*, that this was a final judgment from which an appeal would lie to this court.

The definition of a final judgment given in *Loring* v. *Illsley*, (*ante, p.* 24,) explained.

Where it appears on the face of the judgment record itself, that there was no trial before a jury and no evidence given to the court, it will not be presumed on appeal that any evidence was adduced in the case, but the court will presume that the cause was heard on the pleadings alone.

*It seems*, that the certificate of the clerk of the district court could not be received to contradict the plain import of the judgment.

The supreme court alone has a revisory jurisdiction, by way of appeal, over judg-

Belt *v.* Davis.

ments of courts of First Instance; and in respect to such judgments, district courts are not courts of review, and have no jurisdiction to examine into their regularity or validity, unless, perhaps, in case of a judgment fraudulently rendered.

The decision in *Von Schmidt* v. *Huntington*, (*ante, p.* 55,) that where a cause is heard on bill and answer the allegations of the latter are to be taken as true, affirmed.

Thus where a bill was filed to set aside and vacate a judgment, on the ground that it was obtained through fraud, venality and corruption, and these charges were all sufficiently denied in the answer, and the cause was heard on the pleadings; *held,* that the effect of the denial in the answer was the same as if the charges in the bill had been disproved by testimony.

APPEAL from the district court of the county of San Joaquin. The facts are stated in the opinion of the court.

*Gregory Yale,* for plaintiff and respondent.

*Hall McAllister & D. M. Perley,* for defendant and appellant.

*By the Court,* BENNETT, J.   The appellant recovered a judgment, on the 19th day of February last, against the respondent for $5948, in the court of First Instance of the district of San Joaquin.   This judgment was, by virtue of the act superseding certain courts, transferred into the district court for the county of San Joaquin in the fifth judicial district, and an execution was issued thereon and levied upon the property of the respondent.   He then filed a complaint in the district court, alleging that the judgment was obtained by means of collusion, venality and corruption, and also complaining of irregularities, errors, and abuse of power by the court, during the progress of the trial which resulted in the judgment.   There seems to have been no ground for the charge of collusion, &c.   Upon this complaint an injunction was issued, and the sheriff restrained from proceeding under the execution.   The appellant demurred to a portion of the bill, pleaded the judgment of the court of First Instance in bar, and supported his plea by answer under oath denying the matters charged in the bill on which the judgment was sought to be impeached.   The cause was heard upon the pleadings, no testimony being introduced by either

party, and the district court set aside the judgment, and awarded a new trial, from which determination this appeal is brought.

It is claimed by the counsel for the appellant, 1st, That the district court had no power to set aside, modify, or in any way invalidate the judgment rendered by the court of First Instance; and 2d, That, admitting the power, the facts do not present a proper case for the exercise of it; whilst, on the part of the respondent, it is contended, 1st, That the return of the district court does not appear to be a full and complete record, and that the presumption, therefore, must be, that there was sufficient evidence to warrant the decision of the district court; and 2d, That the determination appealed from is not a final judgment from which an appeal may be taken.

The first question to be determined is, whether the decision of the district court be a final judgment. By section 258 of the Practice Act of April 22, 1850, it is enacted that no appeal shall lie from any but a *final judgment;* and it is, to say the least, very questionable whether section 279, which authorizes the court to reverse, affirm, or modify any judgment, *order,* or *determination* appealed from, can be properly construed as qualifying the positive prohibition of the previous section. What, then, is meant by the term *final judgment,* as used in this statute?

In the case of *Loring* v. *Illsley,* decided at the March term of this court, we ventured from recollection, unaided by authorities, of which there was then none at our command, to give a definition of an order as distinguished from a final judgment. We find, on looking into the authorities, that the definition there attempted, although sufficiently broad to cover the case then under consideration, is too restricted, and that the term *final judgment* has a somewhat more comprehensive meaning.

The case of *Beach* v. *Fulton Bank,* (2 *Wend.* 225,) and the case of *McVickar* v. *Wolcott,* (4 *J. R.* 510,) cited by the counsel for the appellant, are not in point. The former was an appeal from an order of the chancellor denying an application made by the appellants to open the proofs in the cause, for the

Belt *v.* Davis.

purpose of re-examining witnesses; and the latter was an appeal from an order of the chancellor refusing to dissolve an injunction. In each case the appeal was, confessedly, from an *interlocutory order*, and was entertained solely by virtue of the statute then in force, which expressly extended the appellate jurisdiction of the court for the correction of errors, to *interlocutory orders* of the court of chancery.

On the other hand, the supervisory control of the court of errors over the proceedings of the supreme court of New York, reached only to final judgments, and the decisions in such cases, therefore, are entitled to consideration in determining the question under discussion. In *Yale* v. *The People*, (6 *J. R.* 602,) which went up to the court of errors from a decision of the supreme court refusing to allow a *habeas corpus*, it was held, that whenever a decision was made in the supreme court, which was final, and of which a record could be made, and which decided the rights of property or personal liberty, the court of errors had jurisdiction. In *Clason* v. *Shotwell*, (12 *J. R.* 31,) on an indictment for a forcible entry and detainer, no return could be obtained to a *certiorari*, by reason of the death of the justice before whom the proceedings were had, and the supreme court had investigated the cause on affidavits and awarded a restitution. The court of errors held, that it might review the proceedings on the evidence presented to the court below; and it was said, that the true inquiry, in determining the question whether the decision under review was an order or a final judgment, was whether the judicial proceeding constituted a cause by itself, and had received its final decision in the supreme court; if so, the case contemplated by the constitution existed, and the cause might be brought to the court of errors for revision. The rule as finally settled in that court, is that every definitive sentence or decision of the supreme court, by which the merits of a cause are determined, although it be not technically a judgment, or the proceedings are not capable of being enrolled, so as to constitute what is technically called a record, is a judgment within the meaning of the law, and as such, subject to the revisory jurisdiction of the court of errors.

(*Graham on Juris.* 602.)   The rule is the same when applied to the jurisdiction of the supreme court of the state of New York in reviewing the final judgments of inferior courts, and is in no respect different from the common law rule as established by the court of king's bench in England; according to which, by a final judgment is to be understood, not a final determination of the rights of the parties, but merely of the particular suit. Thus, for instance, a judgment of nonsuit, other than where the plaintiff submits to a voluntary nonsuit, is a final judgment even though no costs be awarded against the plaintiff, inasmuch as he is aggrieved by being defeated of his right of action in that suit, and of his costs in prosecuting it.   (*Graham on Juris.* 233.)   In strict accordance with the rule as thus given is the decision of the supreme court of the United States in *Weston v. The City Council of Charleston.* (2 *Peters*, 449.)   The 25th section of the judiciary act of the United States enacted, that a final judgment or decree in any suit in the highest court of law or equity of a state in which a decision in the suit could be had, might be re-examined and reversed or affirmed in the supreme court.   It was held, under this act, that the words *final judgment* in the above section must be understood as applying to all judgments and decrees which determine the particular cause, and that it was not requisite that such judgments should finally decide upon the rights which are litigated.   This appears then to be the correct rule so far as it can be expressed in any general definition, without reference to the particular nature of each individual case; but the remark of Senator Sandford, in *Clason v. Shotwell*, above cited, is worthy of being borne in mind in connection herewith, " that this question is not to be determin-" ed by technical definitions and verbal criticisms on the terms " and phrases in which judgments have been, or may be, ex-" pressed."

Does, then, the determination appealed from in the case at bar come within the rule as above laid down ?   The proceeding was commenced as an original suit, in the ordinary way, by filing a complaint; and this complaint was contested by the defendant, in his answer thereto, as an original proceeding, and

Belt *v.* Davis.

not as a continuation of the suit instituted by him in the court of First Instance. The complaint alleges matters by reason of which it is prayed that the judgment of the court of First Instance be set aside and a new trial granted. The answer denies the matters charged in the complaint, and insists that the district court ought not to set aside the former judgment and grant a new trial. The whole scope and object of the suit, therefore, is to vacate the judgment and procure a new trial; and whether this should, or should not be done, is the point upon which the issue of the parties is made up. That issue has been finally and definitively determined by the district court, and there is, consequently, no further judgment to be rendered in the suit. This particular cause is completely at an end, and whether the judgment be affirmed or reversed, nothing more remains for the district court to do in this suit, but to issue execution against the unsuccessful party for the costs. The argument at the bar seemed to proceed upon the hypothesis, that the new trial prayed for would, if granted, take place in this suit and be a continuation thereof, instead of taking place in, and being a continuation of, the original cause commenced before the court of First Instance. But this supposition involves the solecism of a new trial being had in a cause in which no trial at all had ever taken place. The new trial, then, would be a proceeding, not in this, but in the former suit—and this particular cause is, by the decision of the court below, completely disposed of. The determination appealed from is, even within the restricted rule laid down in *Loring* v. *Illsley*, a final judgment.

The next question is as to the completeness of the record. It is claimed not to be so, on the ground of a supposed defect in the certificate of the clerk of the district court. The certificate is, that the return is a correct transcript of the proceedings in the cause, but does not contain the usual, and in most cases necessary words, that it is a correct transcript of the whole thereof. It is not pretended that the record is defective in any respect, except that it does not contain any evidence; and upon this negative ground the argument is based that we must presume,

in favor of the proceedings, that there was sufficient proof adduced in the court below to warrant and sustain the judgment. In *Gonzales* v. *Huntley*, decided at the March term, this rule was applied. In that case, however, it appeared from the record, that the cause had been tried before a jury, and the inference was irresistible that there must have been evidence of some description before them upon which their verdict was based; but none of the proceedings or testimony at the trial was returned, and, there being no error apparent on the face of the record, the judgment was affirmed. In the case at bar it does appear from the record returned, that there was no trial before a jury and no evidence given to the court. The judgment itself states that the cause was heard on bill, demurrer, plea, and answer; which is, if legal language has any meaning at all, proof of record that no evidence was adduced, equally clear and explicit as if the clerk had, in so many words, certified to that effect; for when it is said, that a cause was heard on bill and answer, or on plea or demurrer, the expression itself, *ex vi termini*, precludes the idea of proofs having been taken. In case proofs have been taken, the language used is, that the cause was heard on pleadings and proofs. It would be worse than useless to put the parties to the expense and delay of procuring a formal certificate of the clerk upon the point in dispute, when such certificate, if procured, could not be received to contradict the plain import of the judgment itself. We shall, therefore, consider the cause as having been heard upon the pleadings alone without proofs; which brings us to the inquiry, whether the district court had the power which it has assumed to exercise, and whether, if it had such power, it has been properly used.

First, as to the existence of the power. The case must be controlled by the act regulating appeals, approved February 28th, 1850, which gives to the supreme court alone a revisory jurisdiction, by way of appeal, over judgments of courts of First Instance, whether such judgments have been transferred to the district court or not. By the 29th section of that act, jurisdiction over judgments rendered in courts of First Instance is conferred, in general terms, upon the district courts, upon the

Belt *v.* Davis.

transfer of such judgments from the former to the latter. The 31st section provides for appeals from such judgments after their transfer, and directs by whom the return shall be made. The 32d section provides for the settlement of a case, in order to bring the testimony and the other proceedings at the trial before this court; and the 33d section declares that the district court shall proceed to hear, try, and determine all suits and proceedings transferred therein, in which judgments shall not have been rendered in the courts of First Instance, but no portion of the statute gives the district court, either expressly or by implication, jurisdiction to set aside, modify or impair any judgment already rendered by a court of First Instance, either upon motion in the same suit founded upon affidavits, or by an original complaint having for its object the attainment of that end. The only portion of the statute, which can be urged as conferring that power, is the last clause of section 29, which declares that the district court shall have jurisdiction over the judgments of courts of First Instance transferred as therein provided; but this clause should be limited to the jurisdiction necessary to be exercised in enforcing the judgment, and settling the rights and claims of different parties growing out of it, and should not be construed as conferring a power in hostility to the spirit of the whole act. The district court is not, in respect to such judgments, a court of review, and has not, either directly or indirectly, jurisdiction to examine into their propriety or validity, unless, perhaps, where a clear case of fraud should be made out. The act to regulate proceedings in the district courts, &c., approved April 22d, 1850, has nothing to do with the case; but we may be allowed to express our doubts whether that act would authorize a proceeding of this description in any case. The method of correcting errors therein pointed out, is by appeal, or by motion for a new trial in the cause in which the original judgment was rendered, but we doubt whether it countenances the institution of a new suit for that purpose.

Secondly. If the district court possessed the jurisdiction claimed, was it properly exercised. The bill alleges matters which would probably be sufficient to invalidate the judgment

Belt *v.* Davis.

upon application to a court of chancery, if such court existed. But the plea and answer deny all the material allegations of the bill, and, in turn, prefer various charges against the plaintiff. The answer to the question last proposed, must therefore depend upon the effect which is to be given to an answer, when a cause is heard on bill and answer, or to a plea, when the cause is set down for hearing upon the plea. In the case of *Von Schmidt* v. *Huntington*, decided at the March term, it was held that where a cause was brought to hearing on bill and answer, the allegations of the latter are, with but a single qualification, to be taken as true in all respects, and this, entirely independent of the inquiry whether such allegations are responsive to the bill, or are set up as a distinctive defence by way of avoidance. A different rule assumed by counsel upon the argument has induced us to look into the books, from which we find that the position taken in *Von Schmidt* v. *Huntington* is amply sustained by the highest authorities. The doctrine is coeval with the earliest regular administration of the chancery jurisdiction in England; for it was one of Beame's orders, that when the hearing is on bill and answer, the answer is admitted as true in all respects. From that time to the present the rule has never been once questioned in England. The following is the language upon this subject of a modern treatise on chancery practice, of the highest respectability : " Where the cause is heard " on bill and answer, every matter set up in the answer, whe- " ther responsive to the bill or of pure avoidance, must be taken " as true ; and this is the rule even where the defendant only " avers that he believes and hopes to be able to prove such " facts." (1 *Hoffman's Ch. Pr.* 222.) The same practice is asserted in the following authorities : *Brinckerhoff* v. *Brown*, 7 *John. Ch. Rep.* 217; 1 *Wash. R.* 162; 5 *Mum.* 467, 483; 6 *id.* 142. The same rule holds good in the case of a chancery plea. If it is bad in form and substance, but the facts are true, the plaintiff sets it down for argument—but if it is considered good in form and substance, but the facts are not true, the plaintiff takes issue upon it by a replication, and proceeds to examine witnesses as in case of an answer. (1 *Hoffman's Ch. Pr.*

The People *v*. Turner.

222; *Mitford's Tr. on Plead.* 244; *Cooke* v. *Mancius*, 4 *Johns. Ch. R.* 166.) The pleadings and proceedings in this cause seem to have been conducted throughout according to the system of chancery practice, rather than under the new practice of this state; and, no objection being made, we think we should consider them in the same way. The plea and answer, then, being assumed as true, in all respects, there is no ground upon which the judgment appealed from can be sustained. It must, therefore, be reversed with costs to the appellant in both courts.