[Civ. No. 1029. Fourth Appellate District.—June 20, 1933.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Petitioner, v. SUPERIOR COURT OF SAN DIEGO COUNTY et al., Respondents.

Hamilton, Lindley & Higgins and William M. Hiatt for Petitioner.

Stearns, Luce & Forward, Albert J. Lee and Fred Kunzel for Respondents.

MARKS, J.—Petitioner is the successor of the Pacific-Southwest Trust and Savings Bank. It does not appear when the change of name occurred. For the sake of brevity we will hereafter refer to petitioner and the Pacific-Southwest Trust and Savings Bank as the "Security Bank" as

the change of name does not affect the merits of the controversy.

About March 17, 1927, Harry A. Clark offered to purchase certain real estate in San Diego from the Security Bank for $15,000. He deposited $1,000 with the Union Title Insurance Company to apply on the purchase price, together with an agreement to pay the balance within ninety days. This offer was not accepted by the Security Bank, but immediately after making deposit of the thousand dollars, and before any contract for the purchase was made, Clark took possession of the land and commenced the erection of a bungalow court upon it. By the twenty-first day of July, 1927, he owed $7,000 for labor and materials used and for which he was unable to pay. In July, 1927, he applied to the San Diego Trust and Savings Bank for a loan of $18,000 secured by a lien on the premises.

On August 12, 1927, the Security Bank sent a letter of instructions to the San Diego Trust and Savings Bank inclosing a deed to Harry A. Clark and Elizabeth Clark, his wife, and a note in the principal sum of $14,000, and deed of trust on the premises securing the payment of the note, both to be executed by Clark and his wife. Under the instructions finally given the $14,000 deed of trust was to be subject to a first deed of trust to secure the $18,000 loan to be made by the San Diego Trust and Savings Bank to the Clarks. The instructions of the Security Bank to the San Diego Trust and Savings Bank contain the following paragraph which is material to the issues before us: "Also it is a further condition of this escrow that the loan of $18,000 obtained by Mr. and Mrs. Clark from the San Diego Trust & Savings Bank be used only for the payment of material and labor claims existing vs. the property on this date and the balance for the completion of the Bungalow Court now in the process of construction to the extent of 32 cottages, under a contractor's bid and bond guaranteeing the completion of such project without further incumbrance."

The $1,000 was paid to the Security Bank, the deed to the Clarks was delivered and recorded, as were the two deeds of trust, the San Diego Trust and Savings Bank securing a first, and the Security Bank a second encumbrance upon the property.

The $18,000 loaned by the San Diego Trust and Savings Bank to the Clarks was expended as follows: $195.99, interest on the loan; $1,000, to repay a prior indebtedness of Clark; $10, interest; $16,794.01, "upon claims existing against the construction of said bungalow court on the property herein involved at the time of the making of said loan and for material and labor used in the further construction of said project". There was neither "contractor's bid" nor "bond guaranteeing the completion" of the bungalow court "without further incumbrance".

The Security Bank learned of the violation of the escrow instructions and instituted its action to quiet title to the real estate. The case was tried and all material facts in issue were found in favor of the plaintiff. The trial court in the exercise of its equity jurisdiction entered what it called an "interlocutory decree" in accordance with its findings of facts and conclusions of law, with the one exception that it was provided that the San Diego Trust and Savings Bank have until October 30, 1931, approximately three months after the rendition of judgment, in which to pay to the Security Bank the sum of $14,000 with interest; and, if the payment were made, then title to the real estate should be quieted in the San Diego Trust and Savings Bank; but if it were not made, then title would be quieted in the Security Bank. This decree continued the trial of the cause until 2 o'clock in the afternoon of October 30, 1931, for the sole purpose of receiving proof as to whether or not the payment had been made by the San Diego Trust and Savings Bank. A hearing was had on that day and it then appearing that payment had not been made, judgment was rendered quieting the Security Bank's title to the property. This was denominated a "judgment quieting title". It was filed and entered November 16, 1931. Notice of entry of the "interlocutory judgment" was given on July 30, 1931, and the second judgment on November 17, 1931.

On November 19, 1931, the San Diego Trust and Savings Bank gave notice of its intention to move for new trial. The motion was made and argued on January 6, 1932. Counsel for petitioner objected to the hearing of the motion upon the ground that the notice of motion was given and filed too late and that the court had no jurisdiction to hear and pass upon it. The motion was continued until January

14, 1932, when the same objection was again made before another judge of the respondent court. On the following day this objection was overruled and the motion for new trial was granted. Nothing further was done in the case until July 15, 1932, when the petition for a writ of review was filed in this court seeking to annul the order granting the new trial.

It is the theory of petitioner that the so-called interlocutory judgment of July 28, 1931, was in fact and in law a final judgment in the case; that the time within which a motion for new trial could have been made had expired long before the notice of motion was filed on November 19, 1931, and that the respondent court and its judges exceeded their jurisdiction in hearing and granting the motion. This presents the question of whether the so-called interlocutory judgment of July 28, 1931, was in fact a final judgment.

Respondents urge, first, that as the petition for the writ of review was filed six months after the entry of the order granting a new trial it was barred by laches; second, that the so-called interlocutory judgment was in fact an interlocutory judgment and that the judgment entered November 16, 1931, was the final judgment; and, third, that since both parties, as well as the judges who tried the cause, treated and regarded the judgment of July 25th as an interlocutory and not a final judgment, petitioner should not now be permitted to question its being such an interlocutory judgment.

In support of their first contention respondents cite and rely upon three cases decided by the Supreme Court, namely, *Keys* v. *Board of Supervisors of Marin County*, 42 Cal. 252, *Reynolds* v. *Superior Court*, 64 Cal. 372 [28 Pac. 121], and *Smith* v. *Superior Court*, 97 Cal. 348 [32 Pac. 322]. In these cases it is flatly held that in the absence of a showing of some special reason for the delay, a writ of review will not be granted after the expiration of the time within which an appeal from the questioned order or judgment might have been taken.

Where the defense of laches is presented it is *usually* held that in addition to the unexplained lapse of an unreasonable time there must be circumstances causing prejudice or injury to an adverse party in order to sustain the plea. (*Cahill* v. *Superior Court*, 145 Cal. 42 [78 Pac. 467]; *Taber* v. *Bailey*, 22 Cal. App. 617 [135 Pac. 975]; *Donovan*

v. *Board of Police Commrs.,* 32 Cal. App. 392 [163 Pac. 69] ; *Carr* v. *Sacramento C. P. Co.,* 35 Cal. App. 439 [170 Pac. 446] ; *La Shells* v. *Hench,* 98 Cal. App. 6 [276 Pac. 377].)

▇▇ If the general rule which we have stated be applied to the facts of the case before us the defense of laches cannot be sustained because of the lack of any prejudice or injury to respondents and the San Diego Trust and Savings Bank from the mere lapse of time. The position of none of them has been changed in the slightest degree between the making of the order granting the new trial on January 15, 1932, and the filing of the petition for a writ of review in this court on July 15, 1932.

In the case of *Diamond* v. *Superior Court,* 189 Cal. 732 [210 Pac. 36, 39], a writ of review was granted by the Supreme Court annulling an order of the superior court granting a new trial because the order was made upon a ground not authorized by statute after the motion had been denied on all statutory grounds. An examination of such of the original files in this case as are available to us would indicate that the petition for a writ of review was filed in the Supreme Court more than sixty days after the superior court made the order which was there sought to be annulled. While the Supreme Court did not specifically refer to any of the three cases cited by respondents, the rigor of the rule established by them may be somewhat modified by language which it used, as follows: "Respondent resists this application upon the ground that jurisdiction to entertain and dispose of motions for new trials is vested in the superior court, and that therefore *certiorari* will not lie, the remedy of the aggrieved party being an appeal from the order. It relies upon a number of cases so holding, but those decisions are no longer authority on the precise point which arises here. Since the amendment to section 963 of the Code of Civil Procedure (Stats. 1915, p. 209) an appeal is no longer allowed from an order granting a new trial in an action tried by the court."

In the case of *Dolan* v. *Superior Court,* 47 Cal. App. 235 [190 Pac. 469, 471], the petitioner sought a writ of review to annul orders made in the respondent court after the rendition of an interlocutory decree of divorce. The appellate court held that the orders were beyond the jurisdiction of the superior court to make and annulled them. In

reaching its conclusion the following language was used: "A void order may be swept aside whenever it comes before a court, and the order vacating the judgment without directing what judgment should be entered was such an order. Upon the present state of the record the original judgment stands unaffected by the subsequent proceedings, unless it be modified or set aside on appeal or in some other way permitted by the statutes."

In *Reid* v. *Superior Court*, 44 Cal. App. 349, at page 355 [186 Pac. 634, 636], the rule was discussed as follows: "While there is no hard-and-fast rule by which to determine whether laches has barred the remedy by *certiorari*, yet under the facts as existing herein a sufficient excuse should be shown for the delay to justify the application for the writ. (*Reynolds* v. *Superior Court of the County of Los Angeles*, 64 Cal. 372 [28 Pac. 121].) The question is fully discussed in *Donovan* v. *Board of Police Commrs.*, 32 Cal. App. 392 [163 Pac. 69]. Therein it is said: 'While it is true, as counsel for the plaintiff contends, that mere lapse of time short of that prescribed by a statute of limitations in any given similar case will not in itself suffice to constitute laches so as to bar a remedy, nevertheless, if in addition it appears from all the circumstances of the case that prejudice must or, from the very nature of the case, may be reasonably expected to result, the remedy will be denied (*Cahill* v. *Superior Court*, 145 Cal. 42 [78 Pac. 467], and cases cited) ;'."

After a careful study of the authorities we have reached the conclusion that the defense of laches should not be sustained and that it should not prevent us from considering whether the order granting the motion for new trial was in excess of the jurisdiction of the superior court. The lapse of time has not affected the rights of any interested party and the delay has prejudiced no one. The order granting a motion for new trial was not appealable and could only be attacked by petitioner in a special proceeding. (Sec. 963, Code Civ. Proc.) The writ of review is intended to supply a remedy where none other exists (*Valentine* v. *Police Court*, 141 Cal. 615 [75 Pac. 336]) and the right of appeal from the questioned order having been removed, the rigorous rule announced by the three early cases relied upon by respondents has lost the reason which supported it.

█ The second contention of respondents has received consideration by both the Supreme and Appellate Courts of the state, with the result that there seems to be some difficulty in applying the established rule to varying facts. One line of authorities is relied upon by respondents to support the contention that the judgment of July 28, 1931, is strictly interlocutory and not final and is not an appealable judgment. Another line of authorities is relied on by petitioner to support the contention that the same judgment is not interlocutory but is final and must be attacked, if at all, on motion for new trial within the ten days permitted by statute.

Respondents have cited many cases involving dissolutions of partnerships wherein the courts have determined by interlocutory decrees that partnerships have existed and have appointed referees to take testimony in an accounting. In these cases it has been universally held that the interlocutory decrees were not final judgments. (See *Middleton* v. *Finney,* 214 Cal. 523 [6 Pac. (2d) 938]; *Di Blasi* v. *Di Blasi,* 209 Cal. 753 [290 Pac. 7]; *Gunder* v. *Gunder,* 208 Cal. 559 [282 Pac. 794]; *Clement* v. *Duncan,* 191 Cal. 209 [215 Pac. 1025]; *Doudell* v. *Shoo,* 159 Cal. 448 [114 Pac. 579].) It has been universally held that in cases of this kind there remained questions for judicial determination by the trial court and for this reason the decrees have been held to be interlocutory and not final.

The three cases which seem to lend support to the contention of respondents that the interlocutory judgment of July 28, 1931, is not a final judgment are *Krotzer* v. *Clark,* 178 Cal. 736 [174 Pac. 657], *Aalwyn's Law Institute* v. *San Francisco,* 39 Cal. App. 365 [178 Pac. 966]; and *Los Angeles Auto Tractor Co.* v. *Superior Court,* 94 Cal. App. 433 [271 Pac. 363].

In the Krotzer case the plaintiff made a written agreement for the sale of a parcel of land in Los Angeles County to Clark for the sum of $4,100. A cash payment of $50 was made and the balance was to be paid in installments. The contract contained the covenant that the land was to be free and clear of all roads, easements or encumbrances and that title should be evidenced by an unlimited certificate of title made by a title insurance company. The action was brought upon the theory that the title was

defective and not in a condition to be corrected. The plaintiff offered to restore to the defendant the $50 and prayed that the contract be annulled and his title quieted. During the pendency of the action the encumbrance upon the property was removed. Supplemental pleadings were filed and at the trial findings were made in plaintiff's favor. Upon these findings the trial court entered an interlocutory judgment decreeing that plaintiff should within a fixed time tender to the defendant a deed and a certificate of title, and if the defendant should for twenty days fail to make the payments specified in the contract, plaintiff would be entitled to a decree quieting his title. The tender of the deed and certificate was made and refused, whereupon the court entered a final decree quieting plaintiff's title. The defendant moved for a new trial, which motion was denied. He appealed from the interlocutory judgment and the order denying the motion for new trial. The Supreme Court held that the attempted appeal from the interlocutory decree was not effectual for any purpose, as it was not one of the interlocutory decrees from which an appeal may be taken under section 963 of the Code of Civil Procedure and ''the court is, therefore, without jurisdiction of the attempted appeal. . . . The defendant did not appeal from the final judgment.'' This case supports the contention of respondents and if it is to be followed the motion for new trial was filed in time and the order granting it cannot be disturbed in this proceeding. The cases of *Aalwyn's Law Institute* v. *San Francisco, supra,* and *Los Angeles Tractor Co.* v. *Superior Court, supra,* seem to lend some support to the position of respondents.

We will now consider the authorities relied upon by petitioner as upholding the view that the so-called interlocutory judgment of July 28, 1931, was in effect a final judgment (*Clark* v. *Dunnam,* 46 Cal. 204; *Zappettini* v. *Buckles,* 167 Cal. 27 [138 Pac. 696] ; *Guaranty Trust & Sav. Bank* v. *City of. Los Angeles,* 186 Cal. 110 [199 Pac. 35] ; *Olds* v. *Thorington,* 47 Cal. App. 355 [190 Pac. 496]). We have spent considerable time in an endeavor to analyze and harmonize the holdings in *Krotzer* v. *Clark, supra,* with those of *Zappettini* v. *Buckles, supra,* and have reached the conclusion that while some minor differences appear in the facts of the two cases, these differences are not of

sufficient substantiality to enable us to distinguish and harmonize them without being hypertechnical. The facts in *Zappettini* v. *Buckles, supra,* and conclusions by the Supreme Court are clearly set forth as follows: "In this action judgment was given decreeing that the partnership was dissolved, declaring what property belonged to the partnership, describing it, the same consisting of both real and personal property, adjudging that all of said property be sold 'together as a whole and in one parcel at public sale for cash' by a receiver theretofore appointed by the court, and that said receiver, after deducting the costs and expenses of sale, pay the remainder of the proceeds into court 'to abide the further order of the court'; adjudging that the proceeds of the sale be paid and applied as follows: 1. To the payment of the fees and expenses of the receiver, 'the same to be fixed and determined by this court,' 2. To the payment of the fees and expenses of a referee theretofore appointed, the same 'to be fixed and determined by the court,' and 3. 'To the payment of the debts of said copartnership upon the determination thereof by this court, and that the determination thereof be and is hereby reserved by this court until after the return upon the sale of said property'; adjudging that any money remaining after said payments be divided and paid over to the parties in the following proportions, viz.: to plaintiff John Zappettini, 10.3484 per cent thereof, and to defendant Joseph Arata, 89.6516 per cent thereof—such payments to be made 'as ordered by the court, or upon the consent of the parties to this action'; and adjudging further that each party to the action shall pay his own costs. . . . There remains only the question whether the judgment appealed from is a 'final judgment' within the meaning of those words in our statutes on appeal. Notwithstanding the deferring of the fixing of the compensation of the receiver and of the referee, and the reservation of the determination of the question of the debts of the firm to others, the judgment fully and finally determined all the rights of the parties as between themselves. The partnership was dissolved, all the property was ordered sold, and the manner in which the proceeds should be divided was finally adjudicated, including the respective proportions of the two partners in any money remaining after the payment of the

costs of sale, fees of receiver, fees of referee, and the debts of the firm. Nothing remained to be done by the court except the mere ascertainment of the amounts due to others than the parties on account of fees for services in the action and debts owing by the parties as partners, and to see that the decree already made was properly executed. Upon the subsequent ascertainment of the amounts due to others by force of the judgment appealed from the parties to this action will become entitled to the portions of the remainder adjudged to belong to them. It is sometimes very difficult to determine whether a decree is a 'final judgment' within the meaning of that term as used in our statutes concerning appeals. We are of the opinion that the decree before us should be held to be such a final judgment. A somewhat similar decree was held to come within this term in *Clark* v. *Dunnam*, 46 Cal. 204, where the decree was one for the dissolution of the partnership, a sale of all its property and effects, the payment out of the proceeds of the sale, 1st, of the expenses of sale, 2d, any balance due to the receiver, 3d, certain costs, 4th, a certain sum to a creditor, and 5th, any balance remaining to the partners in certain proportions fixed by the decree. It was said that this determined the whole matter in litigation, and that nothing remained for the court to do except to see that the decree was duly executed. In this case it is true that we have a reservation by the court of the question of the debts due others from the partnership, with the result that some action is essential before it can be determined what the surplus will be for division between the partners. That the exact amount of surplus for division between the parties has not been ascertained does not, however, prevent the decree from being a final judgment within the meaning of the statute. In *Clark* v. *Dunnam, supra,* the balance due the receiver was not ascertained, and, of course, wherever the property to be divided consists of the proceeds of a sale to be had, the exact amount can be ascertained only after the sale is had. The general rule applicable in determining whether a judgment is final or merely interlocutory, as deducible from the authorities, is that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the judgment is interlocutory only. Mr. Freeman, in his

work on judgments, says that if, after a decree has been entered, no further questions can come before the court except such as are necessary to be determined in carrying the decree into effect, the decree is final. (Sec. 22.) In section 24, he says that although other proceedings before the master are necessary to carry the decree into effect, yet if all consequential directions depending upon the result of the proceedings are given in the decree, it is final. He further says that it is none the less final because some future orders of court may be necessary to be carried into effect, nor because some independent branch of the case is reserved for future consideration, nor because an account is directed to ascertain what sum is due from one to the other as the result of the decision. In the case before us, nothing further in the nature of judicial action on the part of the court is essential to a final determination of the asserted rights of the respective parties. Those rights are fully established by the judgment. Other proceedings required before the court are simply such proceedings as are necessary to carry the judgment into effect. They relate solely to the ascertainment of the amount of money to be paid from the net proceeds of the sale to other persons, to creditors of the partnership and for fees and expenses of the receiver and referee, the remainder, after such payment, to be divided between the partners in the proportions specified in the judgment. All consequential directions depending on the result of the subsequent proceedings are given in the decree. It seems to us that under the general principles declared to obtain in such matters, the reservation by the court of the determination of these matters does not prevent the judgment before us from constituting a 'final judgment' as between the parties thereto, within the meaning of those words as used in our statutes relating to appeal. There appears to be some conflict in the authorities in the application of the well settled rules bearing on the matter before us, but so far as we have found there is no decision of this court at variance with the views we have expressed, and what is said in *Clark* v. *Dunnam,* 46 Cal. 204, appears to be in line with those views." This rule was followed in *Guaranty Trust & Sav. Bank* v. *City of Los Angeles, supra,* and also in *Olds* v. *Thorington, supra.*

More recent cases in which the rule announced in the case of *Clark* v. *Dunnam, supra*, has been applied are *Sondergard* v. *Breaum*, 83 Cal. App. 352 [256 Pac. 580], *Peoples Ditch Co.* v. *Foothill Irr. Dist.*, 103 Cal. App. 321 [284 Pac. 514], and *Orton* v. *Daigler*, 120 Cal. App. 448 [8 Pac. (2d) 161]. However, these cases are not direct authority supporting the position of petitioner.

It is our conclusion that *Krotzer* v. *Clark, supra*, and its supporting cases and *Zappettini* v. *Buckles, supra*, present a sharp conflict of authority, with the weight in favor of the rule announced in the latter, which we would be required to follow were there no other controlling considerations in the case.

It is the policy of the law in California, where possible, to insure a trial on the merits. A motion for new trial is addressed to the sound discretion of the trial judge. An appellate court will hesitate to disturb an order of a trial judge on such a motion, especially where the order grants a new trial of the issues, unless it is found there has been an abuse of discretion on the part of the trial judge, or unless compelled to vacate the order because of some positive rule of law. If any citations of authorities are needed to support this proposition they may be found in the notes in 20 California Jurisprudence, pages 26, 27 and 28, and in the three supplements to this volume.

A similar policy is announced in regard to the review of judgments on appeal in the case of *People* v. *Bank of San Luis Obispo*, 152 Cal. 261, at page 264 [92 Pac. 481, 482], where it is said: "The right of appeal is remedial and in doubtful cases the doubt should be resolved in favor of the right whenever the substantial interests of a party are affected by the judgment." (See, also, *Anderson* v. *Standard Lumber Co.*, 60 Cal. App. 445 [213 Pac. 65]; *Wright & Hogan, Inc.*, v. *Heide*, 72 Cal. App. 16 [236 Pac. 219].)

We are impressed by the fact as disclosed by the record before us that the judge who tried the cause and the attorneys for the Security Bank and the San Diego Trust and Savings Bank all regarded and treated the judgment of July 28, 1931, as an interlocutory and not a final judgment until long after it was entered and the time to move for a new trial or appeal from it had expired.

In the conclusions of law drawn from the findings of fact dated July 21, 1931, the following language was used: "That an interlocutory judgment should be entered herein providing," etc. The judgment of July 28, 1931, was entitled "Interlocutory Judgment" and contains the following: "The court having heretofore filed its written findings of fact and conclusions of law now makes this interlocutory judgment as follows: . . . It is also hereby ordered and adjudged, that hearing and trial of this matter is hereby continued to and until two o'clock p. m. on October 30, 1931, for the purpose of then and there hearing proof and determining whether or not payment has been made as herein provided for and for the purpose of rendering and entering final judgment herein and hereunder." Notice of entry of this judgment was given as follows: "You and each of you are hereby notified that on July 28, 1931, interlocutory judgment in the above-entitled case was signed, entered in Judgment Book 28, page 167, and docketed in Docket 18, page 408, a copy of which judgment is herewith served upon you."

In the judgment of November 16, 1931, the judgment of July 28, 1931, is referred to five times as an "Interlocutory Judgment". It is also recited there that the case had been continued to October 30, 1931, "for the purpose of rendering final judgment herein". The notice of entry of this judgment was given in the following form: "You and each of you are hereby notified that judgment quieting title in favor of the plaintiff was entered in the above-entitled matter on November 16, 1931, in Judgment Book 86 at page 254, and docketed on November 17, 1931, in Docket Book 19, page 56. Demand is hereby made upon you and each of you that you immediately deliver possession of said property to the plaintiff above named, and that you hereafter desist from asserting or claiming any right, title, estate or lien, ownership, possession or right of possession or interest of any kind in or to any of said property."

Another important circumstance which lends force to the conclusion that the trial judge and all counsel regarded the judgment of July 28, 1931, as interlocutory and not final is that the findings of fact contained no express description of the property in controversy, simply referring "to the property described in plaintiff's complaint". There is no

description of the property in the judgment of July 28, 1931, it merely referring "to the real property here involved". While similar descriptions have been held sufficient in point of law to identify real property they have been referred to as "inexcusably circuitous". (*Kelly* v. *McKibben*, 54 Cal. 192; *Goatman* v. *Fuller*, 191 Cal. 245-251 [216 Pac. 35].) The judgment of November 16, 1931, contained a full and detailed description of the property to which the title was quieted. If the trial judge and counsel had regarded the judgment of July 28th as final it is highly improbable that the "inexcusably circuitous" method of describing the property would have been used in that document and that the judgment of November 16th, which, under such circumstances, could have been little more than an order placing a former judgment in effect, would have been encumbered with a detailed description of the property.

It is true that the opinion of a trial judge and of counsel as to the status of a document may not change its legal effect, still there are expressions in several cases indicating that these opinions might have a bearing on the construction of the instrument. (*Clark* v. *Dunnam, supra; Etchebarne* v. *Roeding*, 89 Cal. 517 [26 Pac. 1079]; *Doudell* v. *Shoo, supra; Clement* v. *Duncan, supra; Middleton* v. *Finney, supra*.) In *Wells* v. *Shriver*, 81 Okl. 108 [197 Pac. 460], at page 479, cited with approval in *Middleton* v. *Finney, supra*, it is said: "Neither does the recital in the judgment 'that further order and final decree of the court await the result of said account' definitely fix the status of the judgment, however the view the court rendering the particular judgment takes of it, and the court's intentions may be considered in determining whether it is a judgment or interlocutory order. . . . It is evident that the court rendering this decision did not expect it to be a final judgment. It is evident that it was not so considered by plaintiff in error Shriver at the time of its rendition." In *Clark* v. *Dunnam, supra*, it is said: "The plaintiff in this action treated the decree as final when he prosecuted an appeal from it. If it was not final his appeal should have been dismissed on that ground. But we entertained the appeal and decided the cause, and in justice the plaintiff should now be estopped to deny the finality of the decree."

In view of (1) the conflict of decisions in California with respectable authority justifying the belief that the judgment of July 28th was actually an interlocutory judgment; (2) the apparent belief of the trial judge and all counsel that it was not final; (3) the fact that counsel for the San Diego Trust and Savings Bank relied upon such authority (*Krotzer* v. *Clark, supra*), the statements in the findings of fact and conclusions of law and the judgment of July 28th, and more particularly the notice of the entry of this judgment served upon them by counsel for petitioner here, as well as the belief of all interested parties that this judgment was interlocutory only, and (4) the fact that the question of the finality of this judgment was not raised until after the time to move for a new trial or appeal from it had expired, we have concluded that petitioner should not now be permitted to question the fact that this judgment was interlocutory, and not final in its nature, especially as the order sought to be annulled gives the right of a retrial of the action.

In 4 California Jurisprudence, 1062, the following rule is announced: "Inasmuch as the writ of *certiorari* does not issue *ex debito justitiae,* but only on application to the court, and for special cause shown, an application therefor ought not to be granted where substantial justice has been done, or where, if the proceedings are quashed, ruinous or very mischievous consequences would ensue, and where, upon such reversal of proceedings, parties cannot be placed *in statu quo;* and this is the rule even if the record, when returned, appears to be defective or informal. While it is true that mere lapse of time short of that prescribed by a statute of limitations in any given similar case will not in itself suffice to constitute laches so as to bar a remedy, nevertheless, if in addition it appears from all the circumstances of the case that prejudice must, or from the very nature of the case may be reasonably expected to, result, the remedy will be denied."

A study of the record has satisfied us that a retrial of the action may be advisable so that complete equity may be done between the parties. If petitioner's escrow instructions had been carried out to the letter it would have resulted in a bungalow court of thirty-two units being completed on the real property. The San Diego Trust and

Savings Bank would have had a first encumbrance on the property to secure a loan of $18,000 and the Security Bank a second lien to secure $14,000. The bungalow court was not completed, but $16,794.01 of the money of the San Diego Trust and Savings Bank was invested in the building of the court. We are not informed whether it would take much or little money to complete the improvements. This fact was undoubtedly within the knowledge of the respondent judge who granted the motion for new trial. We are informed there are no liens upon the property or any suits pending to enforce a liability for labor or materials. Under the terms of the interlocutory decree the San Diego Trust and Savings Bank was required to pay $14,000 to the Security Bank, the balance of the purchase price. This would leave the San Diego Trust and Savings Bank with liens upon the property to secure the total sum of $32,000, and the Security Bank with all of its money in cash instead of a second encumbrance securing a debt of $14,000 upon a completed bungalow court. The total detriment to the Security Bank resulting from the violation of its escrow instructions could not have been more than the cost of completing the bungalow court. The judge granting the motion for new trial was sitting as a chancellor in a court of equity and these considerations may have appealed to his conscience and caused him to grant the motion.

The order sought to be annulled is affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 17, 1933.