[Civ. No. 19444. First Dist., Div. Two. June 19, 1961.]

AUGUSTA PAHL, Plaintiff and Appellant, v. JAMES RIBERO et al., Defendants and Appellants.

[Civ. No. 19476. First Dist., June 19, 1961.]

AUGUSTA PAHL, Plaintiff and Respondent, v. JAMES RIBERO et al., Defendants and Appellants.

Langer & Simpson for Plaintiff and Appellant in No. 19444 and for Plaintiff and Respondent in No. 19476.

Molinari, Casalnuovo & Berger and Leonard B. Berger for Defendants and Appellants in No. 19476 and for Defendants and Respondents in No. 19444.

KAUFMAN, P. J.—These appeals were consolidated in an action for a mandatory injunction brought by Augusta Pahl, hereinafter referred to as plaintiff, against her neighbors, James and Louise Ribero, hereinafter referred to as defendants. The parties own adjoining parcels of real property fronting on Third Street in San Francisco: the plaintiff at 3908 Third Street immediately to the south of the defendants at 3900 Third Street, the corner of Third Street and Fairfax Avenue.

On March 20, 1959, plaintiff filed her complaint alleging that for some years, the defendants had maintained a continuing nuisance and trespass by causing and permitting their premises to lean and bulge in a southerly direction and into and upon her property up to approximately 7⅜ inches, and causing the two-story frame building on her property to be moved, bowed, pushed to the south off the property, and requested a mandatory injunction and $10,000 damages for the cost of repairs.

The defendants answered and cross-complained, alleging that the natural grade level of both properties was far below the grade of the street upon which both pieces of property fronted;

that from time to time, plaintiff had brought in fill upon her property and raised the natural grade level of the property to that of the street, and had used the foundation wall of the defendants' property as a retaining wall, which constituted a continuing nuisance and created enormous pressure so that the defendants' property buckled and leaned in a general southerly direction. The cross-complaint requested that the plaintiff's maintenance of fill on the defendants' property be declared a private nuisance, a mandatory injunction, and $10,000 damages for cost of repairs.

After a trial without a jury which continued for several days, the trial court found the following facts: that for many years, there has been an overhang which at the southwest corner of the defendants' buildings extended over the property of the plaintiff as much as 7½ inches and continuing toward the front of the defendants' property to a diminished extent; that the cost of the necessary repairs and alterations so as to align plaintiff's building to be in its entirety within the boundary line of the land owned by plaintiff was $5,600; and that the reasonable market value of plaintiff's property and improvements has been reduced by this amount.

The court further found that the building owned by the plaintiff had moved laterally and was bowed and disaligned; that the cause of this lateral displacement, bowing and disalignment was not known; that neither of the defendants had been negligent in the construction or maintenance of the overhang, and that the defendants were innocent of any fault in the production or development of the overhang and that the defendants had not acted or failed to act in any way which contributed to or caused the overhang.

The court further found that the plaintiff had no immediate plan for any use or occupancy of said property with which the existence of said overhang would in any manner interfere, or which would in any way be damaged by the overhang, so that money damages would adequately and fully compensate plaintiff for all injuries suffered, and found the damages to her, past, present and future would not exceed $1,000, if the encroachment was allowed to remain and was not increased; that the western portion of the southerly foundation wall of defendants' building leaned in a southerly direction at the side but the footings of the foundation of the defendants' building are entirely upon their lot and the ground level where the foundation was laid; that the hardship resulting to the defendants by granting the mandatory injunction prayed

for would be greatly disproportionate to the hardship caused to the plaintiff by continuance of the overhang as the cost to defendants for the removal would be $5,950.

From the above, the court concluded that: 1) the overhang constituted the maintenance of a continuing private nuisance; 2) the reasonable cost of the alterations and repairs to the plaintiff's property so as to remove the bowing and disalignment and lateral movement and replace said building entirely within the boundary lines of her own property was $5,600, and that the reasonable market value of her property has been reduced by that amount; 3) the plaintiff was entitled to an additional amount of damages of $1,000 for the overhang over the portion of her real property above the ground; 4) the defendants' structure was not a trespass on the plaintiff's land; and 5) the defendants were to take nothing by virtue of their cross-complaint.

Thereafter, on December 22, 1959, the court made and entered a document entitled "Interlocutory Judgment On Findings," denying relief on the cross-complaint, denying plaintiff's request for mandatory injunction without prejudice but expressly reserving jurisdiction to afford relief to the plaintiff if the overhang of the defendants' building across the common building line increased or if the plaintiff or her successors in interest proved to the satisfaction of the court that she had the present intention to realign the building on her property so that it would be contained entirely within its boundaries, and awarding the plaintiff $1,000 damages for the encroachment on her real property above the ground, and her costs of suit. On February 17, 1960, plaintiff filed her appeal, No. 19444, from that judgment.

Thereafter, plaintiff filed her motion for a mandatory injunction in accordance with the above-mentioned provisions of the interlocutory judgment. At the hearing on this motion on February 11, 1960, evidence was introduced to indicate that the plaintiff had signed a contract of sale with a purchaser, Mr. Heil, who had a present intention to realign the building within the boundaries of the property. The trial court granted plaintiff's motion for a mandatory injunction on February 29, 1960, and on April 4, 1960, the defendants filed their appeal, No. 19476, from the order granting the mandatory injunction.

On September 12, 1960, defendants filed a motion to dismiss the plaintiff's appeal from the prior order denying the injunction (No. 19444). This court denied the motion with-

out prejudice and the two appeals were consolidated by stipulation.

Defendants have filed a joint brief in both matters; in No. 19476 in which they are the appellants, they argue that the trial court erroneously granted the injunction because the evidence indicated that the defendants were not responsible for the movement of the plaintiff's property and the resulting bowing and disalignment, and because the trial court failed to balance the equities; in No. 19444, in which they are the respondents, defendants argue that the appeal from the order denying the injunction should be dismissed because the order was not an appealable final order as evidenced by the subsequent order granting the injunction; and that the damages awarded by that order should be denied as the trial court specifically found that they had not caused the overhang or the movement of the plaintiff's property. In No. 19444, in which she is the appellant, plaintiff argues that the interlocutory order was a final appealable order and that she should be awarded the $1,000 damages awarded therein as the defendants have not appealed therefrom. In No. 19476, in which she is the respondent, the plaintiff argues that the injunction was properly granted but that the court erred in not also awarding her damages of $5,600.

The issues thus presented for our consideration are: (1) Is the judgment of December 22, 1959, denying plaintiff's request for a mandatory injunction an appealable order? (2) If so, is the appeal therefrom [No. 19444] made moot by the subsequent proceedings? (3) Did the trial court properly grant the plaintiff's motion for a mandatory injunction? (4) If so, is the plaintiff entitled to both injunction and damages?

The first question on appeal is whether the order and judgment of December 22, 1959 [No. 19444], denying plaintiff's request for an injunction is an appealable order. Defendants argue that since the order is labeled ''interlocutory'' and is by its terms temporary in effect, it is not an appealable one; plaintiff contends that the order is final and appealable.

██ ''Generally no appeal can be taken except from a final order or judgment as defined in the statutes and developed in the case law. (Code Civ. Proc., § 963; *Lavine* v. *Jessup*, 48 Cal.2d 611, 613 [311 P.2d 8].) ██ It is recognized, however, that the term 'a final judgment' as used in the statute is not limited to the final judgment entered in an action (*Sharon* v. *Sharon*, 67 Cal. 185, 196 [7 P. 456]), and that it is the substance and effect and not the designation 'interlocu-

tory' or 'final' which determines the appealability of a judgment." (*Southern Pacific Co.* v. *Oppenheimer,* 54 Cal.2d 784, 785 [8 Cal.Rptr. 657, 356 P.2d 441]; *In re Los Angeles County Pioneer Society,* 40 Cal.2d 852, 857-858 [257 P.2d 1]; *Lyon* v. *Goss,* 19 Cal.2d 659, 669-670 [123 P.2d 11]; *Security-First Nat. Bank* v. *Superior Court,* 132 Cal.App. 683 [23 P.2d 1055].)

Section 963 of the Code of Civil Procedure specifically provides an appeal will lie from an order granting or refusing to grant an injunction (Code Civ. Proc., § 963, subd. 2). ▮ The intent of the statute is that all orders granting or refusing injunctions shall be appealable (*Brydon* v. *City of Hermosa Beach,* 93 Cal.App. 615, 620 [270 P. 255]). It is equally well established that an order denying an injunction is appealable (*Meehan* v. *Hopps,* 45 Cal.2d 213 [288 P.2d 267]).

▮ In the instant case, however, the order was not denying an injunction pendente lite, but after the hearing on the merits. Thus, the trial court came to a fixed determination of the controversy presented by the facts alleged and existing at the time of the decree, but reserved jurisdiction to grant the relief requested, if certain facts occurred. Thus, the future judicial action contemplated depended wholly on facts which might never occur. Under these circumstances, it does not appear that the retention of jurisdiction was a bar to the finality of the judgment (*cf. Fairrington* v. *Dyke Water Co.,* 50 Cal.2d 198 [323 P.2d 1001]). ▮ A final judgment is not a final determination of the rights of the parties, but merely of the particular suit (*Belt* v. *Davis,* 1 Cal. 134, 138).

▮ Although there is some authority for the proposition that the effect of the judgment of December 22, 1959, denying the injunction and awarding damages was interlocutory (*Anderson* v. *Joseph,* 146 Cal.App.2d 450 [303 P.2d 1053]), we think the better view under the circumstances is that it was like a conditional judgment and, therefore, appealable (see 3 Witkin, California Procedure, Judgment, §§ 6, 7, pp. 1878-1879). Even if we were to conclude that the judgment itself was interlocutory, the portion relating to the denial of the injunction would be appealable (*David* v. *Goodman,* 89 Cal. App.2d 162 [200 P.2d 568]).

▮ The next question is the effect of the subsequent proceedings on the appealable order of December 22, 1959. It has been held that where preliminary injunction is denied and later after a hearing on the merits, a final judgment denying the injunction is made, the order denying the preliminary injunction is merged in the final order, and the appeal from the

order denying the injunction pendente lite becomes moot (*Peoples Ditch Co. v. Foothill Irr. Dist.*, 103 Cal.App. 321, 325 [284 P. 514]; *cf. Doudell v. Shoo,* 159 Cal. 448 [114 P. 579]; *Sheward v. Citizens' Water Co.,* 90 Cal. 635 [27 P. 439]). We think logic and good conscience demand a similar rule here, and conclude, therefore, that although the order of December 22, 1959, is appealable, the issues raised thereby have become moot, and the defendants' motion to dismiss appeal in No. 19444 should be granted.

We turn now to the heart of the matter, which is whether the trial court properly granted the mandatory injunction. ▮ It is the general rule in this state that while the right to injunctive relief under proper circumstances is well established, its issuance is largely discretionary with the court and depends upon a consideration of all the equities between the parties. No hard and fast rule can be adopted which will fit all cases and hence each must be determined upon its own peculiar facts (*Phillips v. Isham,* 111 Cal.App.2d 537 [244 P.2d 716]).

In this case, the area of the overhang was a triangular portion of plaintiff's real property above the ground, commencing at the contiguous lot line of plaintiff's and defendants' building at its southwest corner, approximately 7½ inches over into the plaintiff's property and from there northerly from the southwest corner of said defendants' building to the mutual lot line and from there to the point of beginning at Third Street.

As indicated above, the court specifically found that the overhang had existed for many years, and that the plaintiff's property had been laterally moved, but that the cause of the movement was unknown and the defendants in no way responsible therefor. The court also found that the natural grade level of both properties was below the grade of Third Street and that from time to time the plaintiff had brought fill onto the property to raise its grade level to that of the street. The plaintiff testified that she had lived on the property since 1927; that the backyard of the defendants' house was at the original sidewalk level which is 8 feet or so below the now existing level of the plaintiff's lot and Fairfax Avenue; that plaintiff put fill in her lot in the '30's when Phelps Street was raised, and again in 1949 when the city filled and paved Fairfax Avenue; that her backyard was now 4-5 feet higher [than the original sidewalk level] but not up to the 8 feet that the rear of her lot was below Fairfax.

Defendants argue that under these circumstances, the equitable relief granted was improper. We do not agree. Rather, we think this case is on all fours with *Kafka* v. *Bozio,* 191 Cal. 746 [218 P. 753, 29 A.L.R. 833]. In that case, as in this one, the parties were the owners of adjoining lots in San Francisco. The south line of the defendants' lot formed a portion of the north line of the plaintiffs' lot. Before the earthquake and fire of 1906, the defendant had erected a building on a scow foundation, consisting of a scow or raft constructed of heavy timbers and concrete, covering the entire lot, around the border of which was a concrete wall 17 inches thick which served as a foundation wall of the building. The fire of 1906 destroyed the building but left the scow and the concrete foundation walls intact. It was then discovered that the entire scow had moved in a southerly direction so that it and the defendants' south wall projected into the plaintiffs' premises a distance varying from 10 inches to 14 inches. When the plaintiffs demanded the removal of the wall from their premises, the defendant refused, indicating it was more economical to give a portion to the plaintiffs than to tear it out. In 1908 defendant erected a new four-story building upon his original foundation entirely within the boundaries of his own lot. Shortly thereafter, plaintiffs erected a four-story building on their lot, mainly upon a pile foundation, but in part upon walls resting upon the original soil and where it adjoined defendant's resting upon that portion of defendant's original wall which had encroached upon plaintiffs' premises. As the two buildings were originally constructed, there was a space of about two inches between them. In December 1941, it was discovered that the wall along the boundary line between the two lots had sunk, with a resultant tipping of defendant's building toward the south, so that the upper portions thereof encroached about 2 inches upon plaintiffs' lot, pressing against their building, warping and distorting same so that plate glass windows therein were broken, plaster was cracked, doors and windows jammed, plumbing connections leaked, etc. The plaintiffs wanted to straighten and repair their building and were unable to do so under the existing conditions and brought the action to abate the nuisance.

There, the wrong, as here, was not an encroachment upon the plaintiffs' land but upon the space above the land, and the Supreme Court found that the encroachment was a nuisance rather than a trespass and indicated that an injunction

was a proper remedy, saying at page 748: ". . . the mainte-
nance . . . of a building which overhangs the premises of
another is a violation of the latter's rights which amounts in
law to a nuisance, regardless of whether or not it is due to
any negligent act or omission." Ever since, it has been held
that an owner of land may not do even nonnegligent acts on
his property with impunity where they create a nuisance as
to his neighbor, and that in such circumstances the owner of
the neighboring land is entitled to appropriate relief (*Shields*
v. *Wondries,* 154 Cal.App.2d 249, 255 [316 P.2d 9]).

Defendants argue, however, that since they did not act in
any way here the mandatory injunction should not have been
granted.

The proper rules for the application of this doctrine
were recently set forth by this court [Division One], after an
exhaustive review of the relevant authorities in *Christensen* v.
*Tucker,* 114 Cal.App.2d 554, at pages 562-563 [250 P.2d 660]
as follows:

"It is our view that the better reasoned cases hold that in
encroachment cases the trier of the fact possesses some discre-
tion in determining whether to grant or to deny the mandatory
injunction. In exercising that discretion, and in weighing the
relative hardships, the court should consider various factors.
It starts with the premise that defendant is a wrongdoer, and
that plaintiff's property has been occupied. Thus,
doubtful cases should be decided in favor of the plaintiff.

In order to *deny the injunction, certain factors
must be present*: 1. Defendant must be innocent—the en-
croachment must not be the result of defendant's willful act,
and perhaps not the result of defendant's negligence. In this
same connection the court should weigh plaintiff's conduct to
ascertain if he is in any way responsible for the situation.

2. If plaintiff will suffer irreparable injury by the
encroachment, the injunction should be granted regardless of
the injury to defendant, except, perhaps, where the rights of
the public will be adversely affected. 3. The hard-
ship to defendant by the granting of the injunction must be
greatly disproportionate to the hardship caused plaintiff by
the continuance of the encroachment and this fact must clearly
appear in the evidence and must be proved by the defendant.
But where these factors exist, the injunction should be denied,
otherwise, the court would lend itself to what practically
amounts to extortion." [Emphasis supplied.]

In applying these criteria to the facts of the instant case, it is clear as to the first that the defendants' innocence is established. The court found that the cause of the lateral movement of the plaintiff's property was unknown and that the defendants were in no way responsible therefor. As to the second, however, it is clear that here, the court concluded that irreparable injury would result as the plaintiff's building could not be straightened out and aligned to conform to the boundary lines of the plaintiff's property unless the encroachment was removed. This is a factual determination supported by the evidence.

As to the third criterion, the court found that the cost of removal to the defendant was $5,950 while the cost of repair to the plaintiff and the decline in the market value of her property was $5,600. These findings are also amply supported by the evidence. Thus, there was no indication that the hardship by the granting of the injunction was greatly disproportionate to the hardship to the plaintiff. Rather, the evidence indicated that the hardships were equal. When a court of equity balances conveniences to determine that an injunction otherwise warranted, should be withheld, its action approaches an exercise of the right of eminent domain in favor of a private person (*Fairrington* v. *Dyke Water Co.*, 50 Cal.2d 198, 201 [323 P.2d 1001]). We think the court here properly weighed all the factors and concluded that the injunction should not be denied.

The final argument is the plaintiff's contention that she is entitled to $5,600 in damages in addition to the mandatory injunction. We cannot agree. A similar contention was rejected in *Spaulding* v. *Cameron*, 38 Cal.2d 265, at page 270 [239 P.2d 625], as follows:

"On retrial the trial court should determine whether or not the nuisance is in fact permanent. If it finds that it is, it should enter judgment for the decrease in market value. If it finds that it is not, it should grant injunctive relief and such additional damages as may be proved for the temporary decrease in the value of the use of the property while the nuisance continued. (See *Bourdieu* v. *Seaboard Oil Corp.*, 48 Cal.App.2d 429, 437-438 [119 P.2d 973]; *Guttinger* v. *Calaveras Cement Co.*, 105 Cal.App.2d 382, 387 [233 P.2d 914]; McCormick on Damages, § 127, pp. 503-504.)"

The trial court's action here was in complete accord with the above rules. As the trial court found no temporary decrease in the value of the use of the property by the plaintiff

while the nuisance continued, there was no additional element of damages proved. We think the trial court is to be commended for reaching such a Solomon-like resolution of the many difficult questions of law and fact presented.

Judgment granting injunction Civil No. 19476 is hereby affirmed.

Appeal from interlocutory judgment Civil No. 19444 is hereby dismissed.

Draper, J., and Shoemaker, J., concurred.